Kenneth SAILER, Petitioner-Appellee,

v.

J. B. GUNN, Respondent-Appellant.

No. 75–2087.

United States Court of Appeals,
Ninth Circuit.

Jan. 6, 1977.

Shuni Asari, Deputy Atty. Gen. of California, Los Angeles, Cal., for respondent-appellant.

John K. Van De Kamp, Federal Public Defender, Los Angeles, Cal. for petitioner-appellee.

Before MERRILL, CHOY and GOODWIN, Circuit Judges.

MERRILL, Circuit Judge:

Submission was deferred in this case pending our decision in *de Kaplany v. Enomoto,* 540 F.2d 975 (9th Cir. 1976) (en banc). The district court granted Kenneth Sailer's petition for a writ of habeas corpus on the grounds that the state court improperly failed: (1) to hold a competency hearing; (2) to hold a hearing on the voluntariness of a guilty plea or allow it to be withdrawn; and (3) to revoke Sailer's probation in a manner consistent with due process. Relying largely on authority handed down since the judgment of the district court was rendered, we find that none of these three grounds warrants the granting of relief, and, accordingly we reverse.

## FACTS

The facts are set out in full by the district court at 387 F.Supp. 1367 (C.D.Cal. 1974). Sailer was charged on August 24, 1965, by the State of California with assault with a deadly weapon with intent to murder his estranged wife. On October 4, 1965, he pleaded guilty to assault with a deadly weapon. Sentencing was set for October 29, 1965, but it was continued at defense counsel's request to have an evaluation of Sailer at a state diagnostic facility under Cal.Penal Code § 1203.03 (West Supp.1976).

The court convened on March 18, 1966, to fix sentence. At that time the court had before it a probation report dated October 21, 1965, and numerous § 1203.03 reports. The court suspended proceedings without imposing sentence and placed Sailer on supervised probation for five years under certain conditions, one of which was that he be confined in a county jail for one year.

Sailer was next in court on September 13, 1966, on the basis of his probation officer's report (dated July 22, 1966), that Sailer had escaped from an honor farm on June 2, 1966, and voluntarily turned himself in on July 11, 1966. The report indicated that Sailer admitted the escape.

■ Sailer was represented by counsel at the hearing, and apparently the escape was confirmed by his counsel. Sailer addressed the court himself. He admitted his escape, but said it was done to get enough money to fight for a new trial. Defense counsel asserted that at the March 18 hearing Sailer was about to ask the court to withdraw his guilty plea, but for some reason he did not do so. The record, however, was barren of any indication that Sailer had ever desired to withdraw his plea or not to plead guilty. The court rejected Sailer's request to withdraw his plea; probation was revoked and sentence pronounced. Sailer has now been released from custody after serving his full term.[1]

### 1. *Sailer's Competence*

The first ground on which the district court granted Sailer's petition was that under *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the state court should have held a hearing to determine whether Sailer was competent to participate in the criminal proceedings being conducted against him. *Pate* holds that when there is a bona fide doubt as to a defendant's competence to stand trial the trial judge must, on his own motion, conduct a hearing to determine the defendant's ability to understand the nature of the proceedings

1. Although Sailer has been discharged, this case is not moot, the petition having been brought before defendant was released. *Cara-*

*fas v. LaValle,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

against him and to assist his trial counsel in his defense.

*Pate, de Kaplany v. Enomoto, supra,* and other cases [2] dealing with the need for a hearing to consider the defendant's competence involved the question of competence to stand trial. Here, Sailer never had a trial. The question, then, is one of the need to have a hearing to test Sailer's competence to participate in nontrial proceedings. These included the guilty plea on October 4, 1965, the first sentencing hearing on March 18, 1966, and the final sentencing on September 13, 1966, when probation was revoked. The standard of competence for a guilty plea is discussed later.

(a) *Competence to Participate in Sentencing and Probation Revocation Proceedings*

Unlike a guilty plea, sentencing and probation revocation proceedings do not necessarily involve the relinquishment of constitutional rights. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). When waiver of constitutional rights is not involved the competence in question entails mental ability and understanding of the same sort that the defendant is called upon to exercise in the course of standing trial. The *Pate* standard, appropriately adapted to fit the context of the proceedings, would thus seem to be the appropriate rule.[3]

■ In determining whether the defendant has the degree of competence necessary if he is to be subjected to or charged with the consequences of the particular proceedings, consideration should be given to the extent to which he can be expected to be called upon to participate in those proceedings and the nature of that participation. It follows that hearing is required if the judge entertains, or should reasonably have

entertained, a good-faith doubt as to defendant's ability to understand the nature of the proceedings in which he is involved, or to participate intelligently in them to the extent that participation is called for.

■ Applying this standard to the case before us we conclude, in the light of *de Kaplany,* that a reasonable judge would not have been compelled to have a good-faith doubt as to Sailer's competence. The items reflecting on Sailer's mental balance recited by the district court in its opinion related largely to Sailer's powers of self-control. 387 F.Supp. at 1369–70. They showed him to be impetuous; that he "acts impulsively with little consideration for the consequence of his actions." *Id.* at 1370. Many of them reflected upon his personality, such as "personality pattern disturbances" and "paranoid personality." *Id.* The only psychiatric report in the record stated:

"Subject is well oriented and shows no intellectual deficit. His affect is generally appropriate. His stream of conversation is logical, coherent and relevant. He shows no evidence of delusions, hallucinations or other symptoms of falsification of reality. He is not particularly anxious or depressed and shows no other significant psychoneurotic phenomena. He appears to be a rather impulse-ridden character who acts out impulsively and has extreme difficulty in handling hostility appropriately."

All reports were presented for the purpose of assisting the judge in deciding the appropriate sentence or disposition. In our judgment the record before the sentencing judge did not suggest that Sailer would have any difficulty in understanding the nature of sentencing or probation revocation proceedings, in comprehending what was at stake on those occasions, or in participating intelligently in the proceedings.[4]

---

2. *See, e. g. Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Tillery v. Eyman,* 492 F.2d 1056 (9th Cir. 1974); *Moore v. United States,* 464 F.2d 663 (9th Cir. 1972); *Laudermilk v. California Dep't of Corrections,* 439 F.2d 1278 (9th Cir. 1971).

3. H. Weihofen, *Mental Disorder as a Criminal Defense* 431 (1954).

4. Sailer's actions and demeanor in court also strongly suggested competence. Before his probation revocation, Sailer apparently consulted with his counsel, indicating a desire to

Certainly the mere fact that psychiatric help was felt to be desirable as an aid to rehabilitation cannot be said to create a bona fide doubt of Sailer's capacity to participate intelligently in the proceedings facing him (or even make a reasoned choice between the alternatives presented, the test of competence to plead guilty, discussed *infra*). To hold otherwise would reflect disparagingly on the mental capacity of many clearly competent persons who happen to be enjoying psychiatric help in meeting the problems of everyday life.

The record suggesting incompetence to stand trial in *de Kaplany* which was handed down after the district court rendered its opinion herein) was far more impressive than was Sailer's. *de Kaplany's* trial defense was insanity. While this was disputed, three psychiatrists testified that he was legally insane at the time the crime was committed. He was described as a "paranoid schizophrenic" with "acute schizophrenic reaction." Still, in that case we held that the *Pate* standard did not require a *sua sponte* hearing by the state trial judge on the question of competence to stand trial. *A fortiori,* it does not require it here.

We conclude that the record here did not operate to create a good-faith doubt as to competence and that under *de Kaplany* the district court was clearly erroneous in concluding otherwise.

### (b) *Competence to Plead Guilty*

■ Competence to plead guilty is now controlled by *Sieling v. Eyman,* 478 F.2d 211 (9th Cir. 1973), to which this court adhered in *de Kaplany,* 540 F.2d at 985. Under *Sieling* the test is whether the defendant had the "ability to make a reasoned choice among the alternatives presented to him." 478 F.2d at 215.

■ *Sieling* held that in a case where the defendant's competence has been put in issue, acceptance of guilty plea requires a

hearing on the question of capacity to make a reasoned choice. While the court did not deal with the question of when competence has been placed in issue (save to suggest that it would arise in the case "where a substantial question of a defendant's mental capacity has arisen," *id.* at 214), in our judgment the *Pate* formula adapted to fit the proceeding is appropriate here. Accordingly we hold that under the due process clause a hearing on a defendant's competence to plead guilty is required if the trial judge entertains or should reasonably have entertained a good-faith doubt as to competence of the defendant to understand the nature and consequences of his plea or to participate intelligently in the proceedings, including his ability to make a reasoned choice among alternatives presented to him.

In *Sieling* a substantial question of the defendant's capacity had indeed arisen— three psychiatrists had agreed that he was insane at the time of the offense under *M'Naghten's* rule. Two of them, however, were of the view that he was competent to stand trial and the trial court so ruled. A month later Sieling notified the court that he wished to plead guilty. Although some inquiry was made to ascertain whether the plea was knowing and voluntary, no further hearing was had on the question of competence to waive the constitutional right to trial. We held that the hearing on competence to stand trial did not suffice; that even where one has the capacity to understand the nature of his trial proceedings and to assist counsel in his defense, it does not follow that he has the capacity to make a reasoned choice between standing trial and pleading guilty—a choice that he himself must make. We held that the facts bearing on the question of Sieling's insanity were such that a hearing should have been ordered *sua sponte.* We stated, however, that where a defendant's capacity has not been placed in question the court can proceed upon the assumption that he has capacity. *Id.* at 214.

address the court. During the hearing he did so, explaining the reasons for his escape. Evidence such as this—evidence tending to show competence—must be considered in addition to

evidence suggesting incompetence. *de Kaplany v. Enomoto,* 540 F.2d 975, 982 (9th Cir. 1976).

*Sieling* is clearly distinguishable from this case on the facts. A case similar to this one was *United States ex rel. Crossman v. Pate,* 440 F.2d 535, 540 (7th Cir. 1971). There a state prisoner contended that the failure to hold a sanity hearing before accepting a guilty plea was constitutional error. At the time of sentencing in state court defense counsel had argued for leniency, "contending that the psychiatric reports indicated that the offenses were the result of an irresistible impulse and that with prompt psychiatric care petitioner could be rehabilitated in a relatively short time." 440 F.2d at 539. In upholding denial of a writ of habeas corpus, the court stated:

> "The excerpts [from reports by prison psychologists] on which petitioner relies tend to explain his antisocial behavior and the risks involved in his parole, but have little, if any, bearing on the question whether he was competent to enter a plea of guilty * * *."

*Id.*

■ On the basis of the evidence before the trial judge, we are of the view that Sailer's capacity was not placed in question in the *Sieling* sense; that the trial court could properly proceed upon the assumption that Sailer had the ability to make the reasoned choice to plead guilty, and that, under *Sieling*, it was clear error for the district court to conclude otherwise.

### 2. *Voluntairiness of the Plea*

■ The second ground on which the district court granted the writ was that the state trial court had not adequately inquired into the voluntariness with which the plea was entered and that acceptance of the plea in absence of such inquiry was a violation of due process. In this respect the court relied heavily on its view that Sailer's competence had been drawn in question. As we have already discussed, we disagree with that view and conclude that the record does not show a due process violation under the applicable standards existing before

*Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *See Moss v. Craven,* 427 F.2d 139 (9th Cir. 1970).

■ The district court concluded, in the alternative, that even if the state trial court had not violated the due process clause by failing to hold Sailer incompetent to plead guilty, or to conduct a hearing on that issue, it should have granted Sailer's motion, made at the time of hearing on probation revocation, to permit him to withdraw his guilty plea and to plead not guilty. In pleading guilty Sailer had received the benefit of a plea bargain under which he had pleaded guilty to a lesser offense (assault with a deadly weapon as against the charged assault with a deadly weapon with intent to commit murder), and had received a sentence of five years probation on condition that he serve one year in jail. It was only after he had escaped from jail, had surrendered himself and had been charged with a probation violation that he had moved to withdraw his guilty plea. We find no denial of due process in denying the motion under these circumstances. *Cf. United States v. Vasquez-Velasco,* 471 F.2d 294, 294 (9th Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973); *Pinedo v. United States,* 347 F.2d 142, 148 (9th Cir.), *cert. denied,* 382 U.S. 976, 86 S.Ct. 547, 15 L.Ed.2d 468 (1966).

### 3. *Probation Violation*

■ The third ground on which the district court granted the writ was that Sailer had been denied due process at the time of the hearing on probation revocation for the reason that he was not advised of his right "to present his side of things." Sailer, however, regretting his impulsive escape from jail, had voluntarily turned himself in and admitted the escape. There was simply no dispute as to whether he had violated the terms of his probation. Lack of advice as to his right to hearing does not amount to deprivation of due process under these circumstances.[5] *Dennis v. California*

---

5. We are applying, in this case, the due process standards existing prior to *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d

484 (1972), which set forth due process requirements for parole revocation. These requirements also apply to probation revocation.

*Adult Authority*, 456 F.2d 1240, 1242 (9th Cir. 1972).

We conclude that the grounds on which the district court acted did not warrant issuance of the writ and that the court must be reversed in these respects. Sailer's petition for writ included other grounds which the court did not find it necessary to reach. Remand for further consideration is thus appropriate.

Reversed and remanded for further proceedings.

*Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The district court suggests that *Morrissey* might be retroactive. 387 F.Supp. at 1374. But *Morrissey* itself made clear that its due process requirements are only

"applicable to future revocations of parole." 408 U.S. at 490, 92 S.Ct. at 2604. *Wolff v. McDonnell*, 418 U.S. 539, 573, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), confirms this.