**Anders STEINSVIK,
Petitioner-Appellant,**

v.

**Douglas VINZANT, Respondent-Appellee.**

**C.A. No. 79–2643.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1980.

Decided Feb. 23, 1981.

Rehearing and Rehearing En Banc
Denied April 9, 1981.

---

Robert Adelman, Seattle, Wash., for petitioner-appellant.

Carol Horan Rainey, Tacoma, Wash., for respondent-appellee.

Before SNEED and FLETCHER, Circuit Judges and JAMESON,* District Judge.

**JAMESON, District Judge:**

Anders Steinsvik has appealed from an order denying his petition for a writ of habeas corpus, filed in the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 2254. We affirm.

### I. Procedural Background

On February 1, 1971, Steinsvik entered a plea of guilty to the crime of credit card forgery in King County, Washington. On September 16, 1971, the imposition of sentence was deferred and petitioner was placed on probation. On July 27, 1974, probation was revoked, and petitioner was given a maximum sentence of 20 years, to run concurrently with sentences imposed on pleas of guilty to the crime of grand larceny.

On May 14, 1976, Steinsvik filed a personal restraint petition in the Washington Court of Appeals. On September 9, 1976, this petition was denied as "frivolous on its face." On June 27, 1977 review was denied by the Washington Supreme Court.

On August 20, 1977, Steinsvik filed the instant petition, alleging that his guilty plea was not intelligently and voluntarily made, that he was mentally incompetent to enter the plea, and that he was not advised as to the maximum penalty for the offense to which he was pleading guilty. The petition was denied on March 28, 1978, the court concluding that the record clearly established that the petition was without merit.[1]

### II. Proceedings in District Court

The report of the magistrate, following a careful analysis of the proceedings in state

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The petition was referred to a magistrate for a report and recommendation. The report recites that both parties "submitted a considerable amount of documentary material for the court's consideration, among which are transcripts of all proceedings in the trial court including: entry of plea, original sentencing, revocation of probation and final sentencing, and resentencing after vacation of one of petitioner's three convictions, copies of hospital records which, although not considered by the trial court were presented to the State Court of Appeals, and a copy of the presentence report considered by the trial court at the time of the original sentencing." Following a review of the record the magistrate concluded that no evidentiary hearing was necessary. The district court agreed.

court, concluded that there was nothing to indicate to the trial judge that petitioner "was not competent either at the time of plea or when he was sentenced." The magistrate rejected petitioner's contention that the totality of the circumstances surrounding entry of the plea indicated that it was not freely, intelligently, and voluntarily entered. The magistrate did not "believe that the record indicates either that [petitioner] was unaware [of the maximum sentence] or that even if he was unaware, any prejudice resulted."

After the court had adopted the magistrate's report and recommendation, objections were filed by petitioner. In a subsequent order the court concluded that its prior order had properly disposed of all issues and that "petitioner was not required to be advised that deportation was a possible consequence of his guilty plea," citing *Fruchtman v. Kenton*, 531 F.2d 946 (9 Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976).

### III. *Contentions on Appeal*

Petitioner contends that (1) there was substantial evidence of his incompetence when he entered his guilty plea, so that the trial court should have ordered a competency hearing *sua sponte*; (2) there was a substantial doubt that petitioner could make a reasoned choice among the alternatives presented when he pleaded guilty; and (3) his right to due process was violated when he entered a guilty plea without being informed of the direct consequences of his plea with respect to (a) the maximum sentence which could be imposed and (b) the possibility of deportation.

### IV. *Standard of Review*

■ In *Stone v. Cardwell*, 620 F.2d 212 (9 Cir. 1980), this court held with respect to petitions for habeas corpus filed by state court prisoners that (1) where the material facts are adequately developed in the state court and made available to the district court,[2] there is no need for an evidentiary hearing; and (2) the findings of the district court as to the voluntariness of a guilty plea cannot be set aside unless clearly erroneous. The clearly erroneous rule applies even when based only on written evidence. See, *e. g., United States v. Mountain States Construction Co.*, 588 F.2d 259, 264 n. 5 (9 Cir. 1978); *Lundgren v. Freeman*, 307 F.2d 104, 113–15 (9 Cir. 1962).

### V. *Competency to Plead Guilty*

This court recognizes, as did the district court, that "under the due process clause a hearing on a defendant's competence to plead guilty is required if the trial judge entertains or should reasonably have entertained a good-faith doubt as to the competence of the defendant to understand the nature and consequences of his plea or to participate intelligently in the proceedings, including his ability to make a reasoned choice among alternatives presented to him." *Sailer v. Gunn*, 548 F.2d 271, 275 (9 Cir. 1977). In *Sieling v. Eyman*, 478 F.2d 211, 214–15 (9 Cir. 1973), the court had noted that competency to enter a guilty plea involves a "further inquiry" than that required in determining competency to stand trial and adopted a standard suggested by Judge Hufstedler in a dissenting opinion in *Schoeller v. Dunbar*, 423 F.2d 1183, 1194 (9 Cir. 1970), "A defendant is not competent to plead guilty if mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea."[3]

---

**2.** In *Stone v. Cardwell*, as in this case, the district court was furnished with complete transcripts of all proceedings in the state court, including the presentence report. On this basis both cases are distinguishable from *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), where the Court held that an evidentiary hearing was required. In that case there was no transcript of the proceedings when the plea was entered or of the sentencing hearing three days later. "The only record was a standard printed form." *Id.* at 77, 97 S.Ct. at 1630.

**3.** *Sailer v. Gunn* analyzes prior cases involving both competency to stand trial, including *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *de Kaplany v. Enomoto*, 540 F.2d 975 (9 Cir. 1976) (en banc), *cert.*

After reviewing all of the evidence before the magistrate in the light of the foregoing principles, we conclude that the district court properly rejected appellant's contention that the trial judge should have "held a bona fide doubt" with respect to appellant's competency to enter a plea of guilty. Appellant relies heavily on his statement to the court prior to the entry of his plea that he was a "little confused." We agree with the finding of the magistrate:

A review of the transcript of the proceedings before the trial judge at the time of the entry of plea clearly indicates that Steinsvik was alert and responded clearly and rationally to the court's questions regarding his plea and the facts underlying the charge. He did express some confusion with respect to the sentencing procedures and the statement he had signed regarding entry of his guilty plea, but the court took pains to assure that he understood and he finally indicated that he thought he understood "pretty well."

The statement signed by Steinsvik recited, *inter alia*, that he had been advised of his rights and waived them by pleading guilty; that he had been advised by counsel the sentence the prosecuting attorney would recommend, but knew the court might not follow that recommendation; and that he understood that if he were sentenced to an institution the court must sentence him "to the maximum under our state law; that the minimum term of sentence is fixed by the Board of Prison Terms and Paroles, and that the recommendation as to minimum made to the board by the sentencing judge and Prosecuting Attorney may not be followed by the Board."

The trial judge did not rely upon Steinsvik's written statement, but questioned him carefully to make certain that he understood it. The court ascertained from both Steinsvik and his counsel that counsel had gone over the written statement with Steinsvik and continued:

The Court: You understand that on the basis of your plea, I will simply proceed to sentence you, and you will have to accept that sentence: that you can't appeal from it; no matter what has been told you about a recommendation, you could be sentenced to prison: Do you understand sir?

The Defendant: Well, I'm a little confused right now.

The court then ordered a recess to permit counsel to talk again with Steinsvik. Following the recess the court was advised by counsel that he believed "that the defendant does fully understand his rights and obligations and is prepared to proceed:"

The Court: Is that right, Mr. Steinsvik? You have had a chance to discuss this?

The Defendant: Yes.

The Court: Apparently you had some question in your mind about what this form meant, and you have had a chance now to talk to Mr. Richey about that. Do you understand it now, sir?

The Defendant: Yeah, I think I understand it pretty well.

The Court: And you understand on the basis of your plea of guilty, if you desire to enter a plea of guilty, I will simply sentence you and you will have to accept that sentence; do you understand that, sir?

The Defendant: Yes.

The Court: Do you have any question in your mind about your client's understanding of the proceedings, Mr. Richey?

Mr. Richey: No. I am sure he understands it fully.

Viewing the evidence as a whole, we cannot agree with appellant that his statement that he was a "little confused" indicates a lack of competency to plead guilty. Rather it appears that both the court and appellant were seeking to make certain that appellant understood the effect of his plea and the sentence which might be imposed.

*denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977), and competency to enter guilty

pleas, concluding that *Sieling v. Eyman* was controlling on competency to plead guilty.

Appellant argues further that the trial judge had knowledge at both the arraignment and sentencing that appellant had recently been hospitalized and was receiving psychiatric care. Again our review of the evidence supports the findings of the magistrate:

> The only evidence [at the arraignment] of any psychiatric problems was the statement of Steinsvik's lawyer to the court that Steinsvik was involved in out-patient psychiatric counseling. The lawyer also indicated that Steinsvik had been involved in a serious automobile accident, had been in the hospital for several weeks and had only been discharged the prior week.
>
> However, none of the foregoing really speaks to the issue of Steinsvik's competence or incompetence on February 1, 1971, and there was absolutely no evidence before the trial judge which could have led him to entertain any doubt regarding Steinsvik's competence to proceed or to enter a plea of guilty....
>
> .    .    .    .    .
>
> At the original sentencing on September 16, 1971, the trial judge had before him a presentence report which disclosed more detailed information regarding Steinsvik's psychiatric problems. The report revealed that one and one-half years previously he had been hospitalized in the neuro-psychiatric ward of the United States Public Health Service Hospital in San Francisco and that he had also been an out-patient at the Public Health Ser-

vice Hospital in Seattle and had been diagnosed as a borderline chronic paranoid schizophrenic.

> The presentence report also stated that Steinsvik claimed to have made many suicide attempts which he himself characterized as not being serious.
>
> The presentence report obviously indicated that Steinsvik had significant emotional problems but there is absolutely nothing in it to have indicated to the trial judge that Steinsvik was not competent either at the time of plea or when he was sentenced. Steinsvik's colloquy with the court at sentencing shows to the contrary. Nor was there any evidence presented to the trial judge at any of the subsequent proceedings before him, i. e., final sentencing on July 29, 1974, or re-sentencing on April 15, 1976, which would have caused him or any reasonable person to have had good-faith doubt as to petitioner's competency.[4]

Appellant in urging good-faith doubt regarding his competency also notes that 36 hours prior to the entry of his plea, he had been hospitalized overnight for an overdose of barbiturates. The magistrate found that "while petitioner may have been under the influence of drugs at 11:55 P.M. on January 30, 1971, when he was admitted to the hospital for an overdose of barbiturates, there is no evidence to indicate that he was under the influence of such drugs at 9:00 A.M. on February 1, 1971, some thirty-six hours later, following his discharge from the hospital."[5]

---

4. In *Sailer v. Gunn, supra*, in concluding that the record did not suggest that the defendant would have any difficulty in understanding the sentencing or probation revocation proceedings, in comprehending what was at stake, or participating intelligently in the proceedings, the court said in pertinent part:

> Certainly the mere fact that psychiatric help was felt to be desirable as an aid to rehabilitation cannot be said to create a bona fide doubt of Sailer's capacity to participate intelligently in the proceedings facing him (or even make a reasoned choice between the alternatives presented, the test of competence to plead guilty, discussed *infra*). To hold otherwise would reflect disparagingly on the mental capacity of many clearly compe-

tent persons who happen to be enjoying psychiatric help in meeting the problems of everyday life.

548 F.2d at 275.

5. An affidavit of Edward Naugher executed December 13, 1977, presented by the appellee, recites that he is a physician employed by the Adult Corrections Division of the Washington State Department of Social and Health Service; that he has had numerous occasions to deal with persons overdosed on barbiturate medication; that barbiturate medications "have no direct impact on the patient's conscious ability to comprehend or to make rational decisions"; and that unless the patient is actually asleep, "he or she is not rendered incapable of his or her rational thought processes."

With respect to appellant's contention that he had a limited knowledge of English and had been in the United States for only seven years when he entered his plea, we agree with the finding of the magistrate that "the transcript of the proceedings clearly shows that he had no problem communicating in or understanding the English language."

■ We recognize that even if the evidence before the trial judge was insufficient to raise a good faith doubt with respect to Steinsvik's competency, he would still be entitled to relief if it now appears that he was in fact incompetent. See *Zapata v. Estelle*, 588 F.2d 1017, 1021–22 (5 Cir. 1979), where the court held that if the petition in a habeas corpus proceeding presents sufficient facts to create a "real, substantial and legitimate doubt as to [his] mental capacity", he is entitled to an evidentiary hearing. There the court found that the testimony of a physician, together with prior medical testimony, was sufficient to raise a substantial doubt of Zapata's competency. Here, however, the additional testimony presented by appellee, which was not considered by any of the Washington courts, supports the conclusion of the district court that no evidentiary hearing was required.

In addition to the affidavit of Dr. Naugher (see note 5), appellee presented affidavits of Dr. Ralph Keyes, a consulting psychiatrist employed by the state of Washington, and Jack A. Richey, appellant's counsel at the time of the entry of plea and sentencing.

Dr. Keyes in an affidavit executed on December 13, 1977, states that he "had treated and become familiar with petitioner Anders Steinsvik"; that he made a diagnosis of "Mr. Steinsvik's emotional and mental status as mild manic depression"; that in his opinion Steinsvik, either with or without medication, "possesses the mental and emotional capabilities of rational thought and comprehension"; and that he has "always felt confident that Mr. Steinsvik was competent to voluntarily receive [medical] treatment and to rationally participate in the consultation."

Richey's affidavit executed on December 12, 1977 reads in part:

5. In representing criminal defendants, my practice is to inform such clients of the potential prison sentences attached to their various charges. I was following this practice at the time of my representation of Mr. Steinsvik.

.    .    .    .    .

7. My many contacts with Mr. Steinsvik led me to be confident that he was capable of, and did, understand and appreciate all aspects of his then current legal situation. Similarly, Steinsvik selected from his options in a rational way.

.    .    .    .    .

9. In view of the above-referenced factors, the best of my current recollection is that Mr. Steinsvik was aware, when entering his plea of guilty under Cause No. 55866, of what potential prison sentence he was thereby making himself subject to.

## VI.  *Alleged Failure to Inform Defendant of Consequences of his Plea*

■ A plea of guilty to be valid must be made voluntarily and with knowledge of its consequences. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Appellant contends that he was denied due process by not being informed of the consequences of his plea with respect to (1) the maximum sentence and the court's mandatory duty to impose it, and (2) the possibility of deportation and the court's power to forbid it.

### A.  *Maximum Sentence*

The statement signed by Steinsvik prior to entry of his plea sets forth his "understanding" that "the court must sentence me to the maximum under our state law." It does not however, state that the maximum was 20 years; nor was 20 years mentioned in the proceedings prior to the entry of the plea. Counsel's affidavit, executed several years later, recites his practice of informing clients of the potential prison sentences, that he was following that practice when he

represented Steinsvik, and that it was the best of his "current recollection" that Steinsvik was aware of the potential sentence.

Following the entry of the plea on February 1, 1971, the prosecuting attorney informed the court that the "State would recommend on sentencing to Count I that the sentence be deferred for a period of three years, on the condition that the defendant make full restitution and pay costs of this action", and upon disposition of Count I, the State would dismiss Counts II and III. He stated further that, "The maximum for this offense is not more than 20 years." Although urged by Steinsvik's counsel to impose sentence immediately,[6] the court declined to do so, stating that he thought it necessary to get a presentence report and that he was going to order a report from the Board of Prison Terms and Parole. The court said further that he did not want to hand out a deferred sentence that Steinsvik could not live with, noted Steinsvik's drinking problem, and continued:

> I don't want him to walk out of here and come back in here six months from now headed for twenty years. A twenty-year sentence, if that can be avoided, and taking a month of his time now to find out what kind of help he needs to stay out of here for the next year or two, I think is worth it, not only from my standpoint but from his standpoint as well.

The court then postponed sentencing to March 1. The sentence was not imposed, however, until September 16, 1971, when the court adopted the recommendation of counsel and placed the defendant on probation for three years on condition that he make restitution when possible and that the defendant remain in a program of group or individual therapy.

**6.** Appellant contends also that the court should not have relied on counsel's assurance that Steinsvik understood the proceedings, noting that Richey was also representing Steinsvik in a civil action arising out of the automobile accident in which Steinsvik was injured and in order to obtain a settlement Steinsvik would have to be a competent witness. For that reason, appellant argues counsel was in a hurry to

The magistrate found that Steinsvik was aware of the 20 years maximum when he entered his plea and that

> even if [Steinsvik] was unaware [of the sentence when he pleaded guilty], he was not prejudiced by the sentence . . . because he was then placed on probation.

> At no time thereafter did [Steinsvik] ever indicate a desire to change his plea or express surprise at the sentence imposed. Indeed, there has never been any allegation or statement by the defendant that he would not have plead [sic] guilty had he known of the maximum sentence applicable. . . .

In *Pebworth v. Conte*, 489 F.2d 266, 267 (9 Cir. 1974), this court held that due process requires that a defendant be advised of the "direct consequence of his guilty plea, that is, the punishment that may be imposed." In *Yellowwolf v. Morris*, 536 F.2d 813 (9 Cir. 1976), however, the court held that the *Pebworth* rule was prophylactic and would not be applied retroactively. The test before *Pebworth* was whether the defendant (1) was not actually aware of the potential sentence, and (2) would not have pled guilty had he known of the potential sentence.

■ We conclude that there is a serious question with respect to the magistrate's finding that Steinsvik was fully aware of the potential punishment when he entered his plea, but that the magistrate properly found that Steinsvik was not prejudiced by the sentence imposed.

In *Yellowwolf, supra*, the court vacated the dismissal of the habeas corpus petition of one defendant, Yellowwolf, who had initially received a prison sentence, and remanded for a hearing, but affirmed the dismissal of the petition of the other defendant, Miesbauer, who had initially received probation. The court said:

> have the proceedings concluded. It is clear, however, that the court was unwilling to accept counsel's request for immediate disposition of the case and did not impose sentence for several months. It may be noted also that counsel had negotiated a plea proposal with the prosecuting attorney which was favorable to Steinsvik and for that reason would naturally prefer an early disposition of the criminal case.

In the case of Miesbauer ... we believe that the existing record establishes that he was not ... prejudiced. It may be that he was not aware of the potential sentence when he entered his plea, but at that time he was given probation, so he had nothing of which to complain. It was five months later, when he was charged with violation of probation and his probation was suspended, that he was sent to the penitentiary. At that time he was represented by counsel and was made aware of the consequences, but he did not ask permission to withdraw his guilty plea or raise any objection to the first proceeding. We note further that Miesbauer's petition for habeas corpus, unlike Yellowwolf's never stated directly that he would not have pleaded guilty had he known the potential sentence. Since this record cannot support any claim of prejudice, we deem it unnecessary to remand his cause for further proceedings, and we affirm the dismissal of his petition.

536 F.2d at 817. Steinsvik's situation is identical to that of Miesbauer on this point. He was not prejudiced even if he were not fully aware of the potential sentence prior to the entry of his plea.

### B. *Possibility of Deportation*

Finally, appellant contends that he was denied due process because he was not informed of the possibility of deportation and the trial court's power to forbid the deportation.

8 U.S.C. § 1251(a)(4) provides:

(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

.    .    .    .    .

(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year

or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial;

Steinsvik's plea to credit card forgery was his first conviction of a crime involving moral turpitude. The plea was entered seven years after Steinsvik had entered the country. He was not accordingly subject to deportation at the time of his plea or sentencing in 1971. It was only after conviction for his second offense of grand larceny in 1974 that he became subject to deportation.

This court held in *Fruchtman v. Kenton*, 531 F.2d 946, *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976), that the possibility of deportation is not a direct consequence of a guilty plea, and the sentencing court is not required to advise an alien defendant that he could be subject to deportation as a result of his plea. Appellant argues that *Fruchtman* is distinguishable because Fruchtman's deportation was mandatory whereas the trial court in this case could have prevented deportation.[7]

■ In *Fruchtman* the court decided that the possibility of deportation was a collateral rather than direct consequence of the guilty plea. The same is true here. Steinsvik is not being deported for his first conviction for credit card forgery, but rather because of his second conviction three years later. His deportation clearly is not "a direct consequence" of his first guilty plea. It was contingent upon and a result of his later conviction for an unrelated offense. The trial judge was not required to inform Steinsvik of the possibility of deportation resulting from a possible conviction for an offense he might commit in the future.

AFFIRMED.

---

7. Where an alien defendant is subject to deportation under § 1251(a)(4), the trial judge, pursuant to § 1251(b), may recommend that the defendant not be deported. Fruchtman, however, was deported under § 1251(a)(11) [conviction for drug dealing]. Subsection (b) is not applicable where the alien is deported under subsection (a)(11).

FLETCHER, Circuit Judge, dissenting:

I dissent on the ground that the record before the district court necessarily created a "real, substantial, and legitimate doubt as to [Steinsvik's] mental capacity" at the time he entered his guilty plea, *Zapata v. Estelle,* 588 F.2d 1017, 1021–22 (5th Cir. 1979). I would remand for an evidentiary hearing on the issue of whether Steinsvik was competent.

I agree that Steinsvik's behavior at the time he entered his plea would not have raised a good-faith doubt as to his competence. Steinsvik appeared to understand the consequences of his plea, and appeared to be able to make a rational choice among the alternatives presented to him. By the time Steinsvik's habeas petition was filed, however, additional evidence on the issue of his competence had surfaced. In view of this additional evidence, I believe the district court erred in failing to hold an evidentiary hearing.

At the time of sentencing, the state court had before it the presentence report revealing that Steinsvik had a history of psychological problems and had made a number of suicide attempts. The state court did not know, however, that approximately thirty-three hours before the hearing at which Steinsvik pled guilty, he had been admitted to Ballard Community Hospital after taking an overdose of barbiturates. This court still does not know the amount of barbiturates Steinsvik took, or whether he was still under the influence of drugs at the time he entered his plea. We also do not know whether Steinsvik's overdose was accidental or was yet another suicide attempt.

If Steinsvik was under the influence of drugs at the time he pled guilty, his understanding of the nature and consequences of his plea could well have been affected. *United States v. Sanders,* 373 U.S. 1, 19–20, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148 (1963); *United States v. Malcolm,* 432 F.2d 809, 812 (2d Cir. 1970).[1] The magistrate in this case found that "there is no evidence to indicate that [Steinsvik] was under the influence of ... drugs at 9:00 a. m. on February 1, 1971," the time of the hearing on Steinsvik's plea. In my view, this finding is clearly erroneous. The evidence before the magistrate was and is sufficient to raise a "real, legitimate, and substantial" doubt as to Steinsvik's competence at the time he entered his guilty plea. *Van Poyck v. Wainwright,* 595 F.2d 1083, 1085 (5th Cir. 1979); *see Saddler v. United States,* 531 F.2d 83 (2d Cir. 1976); *Manley v. United States,* 396 F.2d 699 (5th Cir. 1968).

*Van Poyck, Saddler,* and *Manley* are instructive on this point. In *Van Poyck* the defendant had attempted to hang himself and had set fire to his mattress while in jail. The state court, not knowing of these incidents, accepted the defendant's guilty plea because the defendant behaved rationally in court. The Fifth Circuit held that the defendant had "alleged sufficient facts in federal court to raise a real, legitimate, and substantial issue as to his mental capacity at the time he pled" and was therefore "entitled ... to an evidentiary hearing on his competence to plead guilty." 595 F.2d at 1085.

The defendant in *Saddler* also appeared "rational and coherent" at the time he entered his guilty plea, but the court was unaware that he had "a history of mental illness, including hospitalization ... after an attempted suicide." 531 F.2d at 85. The court was, however, aware of this history by the time of sentencing two months later. The Second Circuit remanded for an

---

1. The majority relies on an affidavit submitted by Dr. Naugher, which concludes that barbiturates "have no *direct* impact on the patient's *conscious* ability to comprehend or to make rational decisions" and do not render a patient "*incapable* of ... rational thought processes." *See* n. 5 *supra* (emphasis added). I am discomfited by my inability to understand the import of the doctor's statement in light of the qualifying adjectives he uses. Putting that aside, however, in my view a defendant is not competent to plead guilty while under the influence of drugs "which could be expected to make a person less acute or aware, less reactive and with lessened capacity to make an important decision." *Manley v. United States,* 396 F.2d 699, 700 (5th Cir. 1968). The record does not show whether the barbiturates taken by Steinsvik may have had this effect on him.

evidentiary hearing on whether the defendant had been competent at the time he entered his plea, holding that the evidence, together with the defendant's "incoherence" at the time of sentencing, was sufficient to raise a doubt. *Id.* at 86.[2]

In *Manley,* the defendant was going through withdrawal on the morning of his plea hearing and had been given two injections. The court was informed of this fact, but did not know the type or effect of the injections. Because the effect of the drugs on the defendant was unknown, the Fifth Circuit held that the evidence was "wholly insufficient to support the District Court's determination that the drugs administered to appellant were of a nature and in an amount which could not have affected his powers and faculties at the time of arraignment and plea." 396 F.2d at 701. As the *Manley* court observed, " '[i]t is hardly necessary to add that certainty as to the lack of any mental effects from drugs upon a defendant in his trial and conviction is a matter of particular judicial solicitude.' " *Id.* (quoting *Hayes v. United States,* 305 F.2d 540, 543 (8th Cir. 1962)).

As in *Manley,* the defendant here may have been under the influence of drugs at the time he entered his plea. As in *Van Poyck,* he may have attempted suicide shortly before the plea hearing. He obviously had a history of psychological problems and suicide attempts, as in *Saddler.* To my mind, the combination of these factors necessarily raises a doubt as to Steinsvik's competence to plead guilty. I would reverse and remand for an evidentiary hearing.

---

**2.** *Saddler* suggests that Steinsvik's presentence report, standing alone, was sufficient to raise a doubt as to his competence. I do not reach this issue, since I believe that the presentence report, coupled with the evidence of the barbiturate overdose, clearly raised such a doubt.