87 F.3d 1326
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles M. YARTON, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 95-50353.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1996.
Decided June 17, 1996.
 
 Before: GIBSON,* NOONAN, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Charles Yarton appeals the district court's denial of his petition for coram nobis relief. We affirm.
 
 I. BACKGROUND
 
 3
 On January 19, 1988, Charles Yarton, a thirty-six-year law enforcement veteran, pleaded guilty to giving another person notice of a planned search and seizure in violation of 18 U.S.C. § 2232(b) (1994). The district court imposed a non-Guidelines sentence of two years imprisonment, suspended, and five years probation.
 
 
 4
 Yarton became a United States Postal Inspector in 1969 after leaving the Denver Police Department. In 1985, Yarton struck up a casual friendship with Janice Rado, an individual who had been the subject of a Postal Inspection Service telemarketing fraud investigation since 1984. Rado, who claimed to have Hollywood connections, was assisting Yarton market a script he had written about the exploits of the Postal Inspection Service.
 
 
 5
 By 1986, the Postal Inspection Service suspected that someone was interfering in its investigation of Rado. After detecting an unusual volume of telephone traffic between Yarton and Rado, the Postal Inspection Service cautioned Yarton about his contacts with Rado. While Yarton denied any improprieties, the Postal Inspection Service suspected that Yarton may have been leaking information to Rado. It is undisputed that during this period Yarton's mental health and ability to perform his job were deteriorating due to a combination of job-related stress and mounting physical infirmities.
 
 
 6
 In November of 1987, the Postal Inspection Service tapped the phone in Rado's office. The wiretap, which began on November 15, intercepted several calls between Yarton and Rado discussing the subpoena of one of Rado's employees. On November 17, the Postal Inspection Service informed Yarton at a team meeting that it was going to execute a search warrant for Rado's place of business. Later that day, Yarton called Rado and warned her of the impending search and instructed her to remove any incriminating documents. Yarton also told Rado, "I'm sticking my neck way out and obviously you never got a phone call...." He also instructed Rado to pretend that she did not know him if he came with other postal inspectors to execute the warrant. Yarton told Rado what documents the Postal Inspection Service would be looking for and advised her to have the office "squeaky clean" when it arrived. After the warrants had been executed, Rado called Yarton twice the next day to discuss the search. On November 19, postal investigators from the Special Investigations Division informed Yarton that his conversations with Rado had been intercepted. Yarton declined to discuss the charges until he had an opportunity to consult with his lawyer.
 
 
 7
 Yarton filed the present petition for a writ of error coram nobis on February 15, 1995, alleging that he was both insane at the time he committed the crime and incompetent at the time he entered his guilty plea.[1] The petition was accompanied by several medical reports from various doctors, the presentence report and addendum, and supplementary declarations from three doctors stating that had they been asked to address the issue of Yarton's sanity at the time that they had examined him, they would have concluded that he was legally insane at the time he committed the crime and incompetent to stand trial.
 
 
 8
 The Government countered with the declaration of Dr. Saul Faerstein, which, based on a review of Yarton's supporting exhibits, concluded that there was insufficient evidence to determine Yarton's insanity at the time of the offense or competency to stand trial at the time of his plea. On June 12, 1995, both sides declined the district court's offer to conduct an evidentiary hearing, choosing instead to submit the issue on the record. After hearing both sides' arguments on July 17, 1995, the district court denied the petition. Yarton appeals.
 
 II. DISCUSSION
 
 9
 A party may use a petition for a writ of error coram nobis to challenge the validity of a conviction even though the sentence--has been fully served. Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir.1987). In a coram nobis proceeding the challenged proceedings are presumed to be correct, and the burden rests with the petitioner to show otherwise. United States v. Morgan, 346 U.S. 502, 512 (1954). In order to qualify for this extraordinary relief, the petitioner must show: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character. Hirabayashi, 828 F.2d at 604. Our focus is on the fourth element. This Court reviews the legal issues de novo and the district court's findings of fact for clear error. Id. at 594.
 
 
 10
 A. ENTITLEMENT TO A PRE-TRIAL COMPETENCY HEARING
 
 
 11
 Yarton contends first that the trial court's failure to conduct a sua sponte hearing on his competency to enter a guilty plea violated his due process rights. "Due process requires a court to conduct a competency hearing on its own motion, before permitting a defendant to waive constitutional rights, whenever a reasonable judge would be expected to have a bona fide doubt as to the defendant's competence." Moran v. Godinez, 57 F.3d 690, 695 (9th Cir.1994), cert. denied, 116 S.Ct. 479 (1995). The Supreme Court has made it clear in Godinez v. Moran, 113 S.Ct. 2680, 2685-86 (1993) (quotation omitted), that competency entails "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him."
 
 
 12
 Factors relevant to this inquiry include the trial court's opportunity to observe the defendant's demeanor, previous irrational behavior, and available medical evaluations. Moran, 57 F.3d at 695. This determination is not to be made mechanically. In order to determine bona fide doubt, the trial judge "must evaluate all the evidence and evaluate the probative value of each piece of evidence in light of the others." Chavez v. United States, 656 F.2d 512, 518 (9th Cir.1981). Our review is not to determine whether the defendant was in fact competent, but merely to determine whether the evidence before the district court was such that would have led a reasonable judge to entertain a genuine doubt as to Yarton's competence. Id. at 516. In making such a determination, we consider only that evidence that was actually before the judge accepting the plea. United States v. Lewis, 991 F.2d 524, 527 (9th Cir.), cert. denied, 114 S.Ct. 216 (1993). We have little difficulty in concluding that there was nothing before the district court capable of raising a bona fide doubt as to Yarton's competence.
 
 
 13
 "Unlike defendant in Pate, petitioner here did not have a history of irrational and violent behavior preceding the crime." Bassett v. McCarthy, 549 F.2d 616, 620 (9th Cir.) (citing Pate v. Robinson, 383 U.S. 375, 379-82 (1966)), cert. denied, 434 U.S. 849 (1977). Furthermore, Yarton readily concedes that none of the medical opinions available to the trial judge even ventured an opinion regarding his competency to enter a plea. The fact is that these evaluations were performed in order to determine Yarton's entitlement to disability benefits, not to gauge his competency. Dr. Drucker's December 21, 1987 report found Yarton to be "totally and permanently disabled" for purposes of working as a law enforcement officer as the result of "bodily injuries and especially by chronic emotional stress, pressure and tension experienced during the years of his employment as a peace officer." That same report, however, characterizes Yarton as "alert, oriented and cooperative," and notes that Yarton's operational judgment was "generally satisfactory." Dr. Drucker's report also notes that he observed "no frankly bizarre or hallucinatory behavior" and that Yarton was doing legal research on his own case during this period. Dr. Karme's January 16, 1988 report is similarly uninformative on the competency issue. It also concludes that Yarton was disabled due to his "physical and mental difficulties." While he observed that Yarton showed "marked depression, anxiety, and difficulty with cognitive functioning," Dr. Karme hazards no opinion as to Yarton's competency. The addendum to the PSR is similarly unenlightening on this issue. It merely recommends conducting a study to determine Yarton's state of mind at the time of the commission of the crime for purposes of a downward departure under USSG § 5K2.13.
 
 
 14
 Some degree of mental illness does not necessarily translate into evidence of incompetence. Steinsvik v. Vinzant, 640 F.2d 949, 953 (9th Cir.1981) (knowledge of defendant's psychiatric hospitalization, diagnosis as a borderline chronic schizophrenic, and numerous suicide attempts did not raise bona fide doubt as to defendant's competency); Sailer v. Gunn, 548 F.2d 271, 274-75 (9th Cir.1977) ("Certainly the mere fact that psychiatric help was felt to be desirable as an aid to rehabilitation cannot be said to create a bona fide doubt of [petitioner's] capacity to participate intelligently in the proceedings facing him...."); De Klapany v. Enomoto, 540 F.2d 975, 983 (9th Cir.1976), ("To support this holding, we point out that the psychiatric testimony favorable to the petitioner presented during the sanity phase was directed toward his responsibility under the criminal law for the crime and not to his competency to stand trial."), cert. denied, 429 U.S. 1075 (1977). In short, the medical evidence available to the district court fell short of the standard required to place a reasonable judge on notice that a defendant's competency should be in issue. Cf. Morris v. United States, 414 F.2d 258, 259 (9th Cir.1969) (prior history of mental illness and previous diagnosis of insanity raised bona fide doubt); Rhay v. White, 385 F.2d 883, 884 (9th Cir.1967) (history of chronic mental disturbances, paranoid traits, violent behavioral explosions, and previous institutional diagnoses raised bona fide doubt).
 
 
 15
 The nature of the crime itself is similarly unindicative of incompetence. While Yarton attempts to frame it as an uncontrollable impulse bereft of reason or logic, we view it as a logical and goal-oriented (albeit foolish, criminal, and ultimately costly) attempt to warn a friend whom he believed to have been unjustly persecuted. We decline to view a poor judgment as the equivalent of insanity. See Sailer, 548 F.2d at 274-75 (defendant who was coherent, well-oriented, and showing no evidence of delusions or hallucinations but acted "impulsively with little consideration for the consequence of his actions," and diagnosed as "paranoid personality" for purposes of sentencing failed to raise bona fide doubt as to defendant's competency); Hernandez v. Ylst, 930 F.2d 714, 718 (9th Cir.1991) (contrasting crime of passion with defendant's participation in the gang rape of his own wife in Drope v. Missouri, 420 U.S. 162 (1975)).
 
 
 16
 Yarton's demeanor and behavior before the district court similarly gave no indication of potential incompetency. In fact, Yarton was articulate, penitent, and logical at the plea proceeding. Yarton's courtroom performance betrayed no indication that he "could not rationally consult with his lawyer or understand the proceedings against him." Hernandez, 930 F.2d at 718; United States v. Mills, 597 F.2d 693, 699 (9th Cir.1979) (finding no bona fide doubt where defendant was "alert, rational, and responsive throughout the trial").
 
 
 17
 Our analysis is further influenced by the fact that neither of the two able attorneys conducting Yarton's defense felt a need to question his competence. As this Court observed in Lewis, 991 F.2d at 528, "[Petitioner's] defense counsels' silence on this subject ... is some evidence that he showed no signs of incompetence at that time." See also Hernandez, 930 F.2d at 718 ("While the opinion of [petitioner's] counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings.")
 
 
 18
 Based on an analysis of the totality of the evidence before the district court at the time of the plea proceedings, we find no evidence that would lead a reasonable judge to entertain a bona fide doubt as to Yarton's competence. See Darrow v. Gunn, 594 F.2d 767, 771 (9th Cir.) (finding no bona fide doubt based on totality of relevant factors), cert. denied, 444 U.S. 849 (1979).
 
 B. POST-PLEA EVIDENCE
 
 19
 Yarton also asserts that the district court should have granted his petition based on recent evidence unavailable at the plea proceedings. "We recognize that even if the evidence before the trial judge was insufficient to raise a good faith doubt with respect to [Yarton's] competency, he would still be entitled to relief if it now appears that he was in fact incompetent." Steinsvik, 640 F.2d at 954.
 
 
 20
 Yarton's petition was accompanied by additional exhibits unavailable to the district court at the time of sentencing. These included statements from Drs. Drucker, Jones, and Karme, each of whom stated that had they been asked to address the issue of Yarton's sanity or incompetency at the time they examined him, they would have concluded that he was legally insane at the time he committed the crime and incompetent at the time of his plea. Yarton argues that once he presented a prima facie showing of incompetency, the district court should have granted his motion unless the Government came forward with evidence rebutting his claim.
 
 
 21
 This argument was heard and rejected by this Court in McKinney v. United States, 487 F.2d 948 (9th Cir.1973). In that case the habeas petitioner offered his own testimony, that of a friend, his general practitioner, two psychiatrists, and a psychologist, all of whom testified at an evidentiary hearing that the petitioner was incompetent at the time of his trial. Id. at 949. Although the Government offered no testimony to the contrary, this Court affirmed the district court's denial of the petition. "The trial judge is not compelled to agree with the legal conclusions of medical experts, especially when the experts' opinions are based entirely upon conversations held with the defendant over three and a half years after the trial." Id. at 950. In this case, every supporting evaluation, with the exception of Dr. Drucker's December 21, 1987 report and Dr. Karme's January 16, 1988 and June 22, 1988 reports, were prepared more than two years after Yarton's plea. The McKinney court went on to note that "increased deference to the trial court's judgment is warranted when he has the trial transcript before him and is able to rely upon his own observations of the defendant at the time of the trial." Id. Based on its prior observations and its intimate knowledge of this case, the district court was in an ideal position to determine how much credit these expert opinions warranted.
 
 
 22
 In this case, the district court had not only the benefit of the previously mentioned factors, but also Dr. Faerstein's declaration. Though Dr. Faerstein's declaration is far from dispositive on the issue of Yarton's incompetence, it was more than sufficient to undercut the probative value of Yarton's supporting declarations. Yarton finally argues that the district court should not have denied his motion without first conducting an evidentiary hearing. The district court offered to do exactly that, but both parties elected to submit the petition on the record. Accordingly, Yarton can scarcely claim error at this stage. See United States v. Haggard, 41 F.3d 1320, 1329 (9th Cir.1994).
 
 III. CONCLUSION
 
 23
 For the aforementioned reasons, the district court's judgment is AFFIRMED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Yarton has apparently abandoned on appeal his contention that he was insane at the time he committed the crime. Appellant's brief at 24, n. 4