**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

v.

ALBERT GARZA,
        *Defendant-Appellant*.

No. 12-10294

D.C. No.
1:10-cr-00165-AWI-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted
January 14, 2014—San Francisco, California

Filed May 20, 2014

Before: Richard C. Tallman and Sandra S. Ikuta, Circuit
Judges, and Beverly Reid O'Connell, District Judge.[*]

Opinion by Judge Tallman

---

[*] The Honorable Beverly Reid O'Connell, United States District Judge
for the Central District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming a criminal judgment, the panel held that the district court did not plainly err by failing to sua sponte convene a hearing on the defendant's competency.

The panel held that there is no substantial evidence that a reasonable judge would harbor a genuine doubt about the defendant's competency, where the defendant's medical history evidence isn't strong and there is no clear connection between the defendant's putative dementia and any negative impact on his ability to understand the proceedings or assist in his defense.

The panel rejected the defendant's attempt to reach plain error in reliance on 18 U.S.C. § 4241(a), requiring competency hearings on reasonable cause, and 18 U.S.C. § 4247(b), governing commitment for the purposes of an examination.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Carolyn Wiggin (argued), Assistant Federal Public Defender, Sacramento, California, for Defendant-Appellant.

Brian W. Enos (argued), Assistant United States Attorney, Eastern District of California, Office of the United States Attorney, Fresno, California, for Plaintiff-Appellee.

**OPINION**

TALLMAN, Circuit Judge:

Albert Garza was sentenced to 20 years in prison after a jury convicted him of one count of "receipt or distribution" and one count of "possession" of child pornography. Garza appeals his conviction and sentence on several grounds. In a memorandum disposition we address all but one of Garza's arguments. In this opinion we decide whether the district court plainly erred by failing to sua sponte convene a hearing on Garza's competency. It did not, so we affirm.

**I**

**A**

By monitoring an online file-sharing network, federal agents discovered that Garza was downloading child pornography. Warrant in hand, the agents went to his home. While some searched, a pair of agents interviewed Garza at length. During the interview, he confessed to everything. The search turned up two computers and a compact disc containing thousands of photographs and videos of child

pornography.  Garza was arrested and indicted for one count of "receipt or distribution" under 18 U.S.C. § 2252(a)(2) and one count of "possession" under § 2252(a)(4)(B).

## B

Shortly after Garza's indictment, his first lawyer hired Dr. Thomas Middleton, a clinical psychologist, to examine Garza and prepare a written competency report.  The report paints Garza as mentally and emotionally crippled by various disabilities and the impact of his arrest.  Middleton diagnosed Garza with anxiety and with dementia caused by uncontrolled diabetes.  He concluded, if obliquely,[1] that Garza was incompetent to stand trial.  Middleton based these conclusions on a single interview and several aptitude tests. He reviewed no medical records.

Relying on Middleton's report, the parties stipulated to, and the district court entered, an order committing Garza to the Attorney General's custody for a competency evaluation. Garza was sent to a Bureau of Prisons facility in Los Angeles for several weeks.  There, he was observed at length, tested, and interviewed by government doctors.  A comprehensive

---

[1] Middleton began his report by summarizing his task, which specifically included assessing "competence."  But in his conclusion Middleton never specifically says "incompetent."  He writes that "Mr. Garza does not appear to be able to rationally address his legal circumstances at this time."  Though this sentence is vague, the gist of the report makes its import clear.  We will give Garza the benefit of the doubt and treat this as a specific diagnosis of incompetency.

report was prepared.[2]  Dr. Lisa Hope, a forensic psychologist and the report's author, wrote that Garza suffered from an anxiety disorder but not dementia.  She concluded that he was competent to stand trial.

Hope also concluded that Middleton's dementia diagnosis was speculative.  She noted that a proper diagnosis requires access to records that Middleton did not have and testing that Middleton did not do.  Hope also reported that Garza was malingering—trying to appear incompetent—by deliberately throwing some of his aptitude tests.  Oddly, she also wrote that Garza "appeared motivated for testing, and put forth sufficient attention and concentration . . . he would say 'Yes!' out loud once he figured out [the answer.]  Overall, he seemed to enjoy the testing process . . . ."  Her report never reconciled this apparent contradiction.

Potential malingering aside, Hope's observations were consistent with her competency finding.  She wrote that Garza exhibited appropriate behavior in his interactions with other prisoners and staff.  She wrote about Garza's commendable work history—he was steadily employed as a mechanic for decades until a heart attack left him unable to work.  Moreover, Hope made clear that Garza understood his situation.  He was able to describe the charges he faced and the identities and roles of the various actors in the criminal process.  Garza told Hope that he liked and trusted his lawyer.

---

[2] We unseal the sealed pages of the Hope report cited in this opinion only to the extent that unsealing is necessary for purposes of this opinion. The sealed materials, including the specific pages cited herein, otherwise remain sealed.

After Garza was released from medical custody and Hope's report was circulated, the competency issue was dropped. Garza's lawyer (a new one) never raised the issue with the trial judge nor moved for a hearing. None was ever held. Accordingly, the district court made no specific finding as to Garza's competency.

## C

Ultimately, plea negotiations failed and Garza went to trial. The investigating agents testified about how they located Garza and found child pornography at his home. A recording of Garza's interview with the arresting agents was played for the jury. The jurors heard him admit to the agents that he had searched for and downloaded child pornography for years.

Garza took the stand to testify in his own defense. On direct, his testimony hinted at incompetence. He testified that he'd seen numerous psychiatrists, that he was mentally disabled, and that "diabetes . . . was eating [his] brain." This last statement, though it sounds over the top, is arguably consistent with Middleton's opinion that Garza's unchecked diabetes may have caused brain damage.

This came later:

> **Q: Have there been times during this case when you haven't really understood everything that's been going on?**
>
> A:  All of it.

**Q: Sometimes when we talk, do you understand everything I'm telling you?**

A:  (Witness shakes head.)

Garza's lawyer elicited this testimony but did not move to have his client declared incompetent.  Nor did the district court take any action on its own.  Later, on cross-examination, Garza contradicted the arrest interview by testifying that he had never before seen child pornography.

The jury convicted Garza on both counts.

### D

At the sentencing hearing, the district court and both parties repeatedly mentioned Garza's mental health, but never referred to his competency.  Both Middleton's and Hope's reports were discussed.  The district court said that it took "at face value" that Garza "does suffer from some mental defects or deficiencies . . . ."  The focus of all this discussion was mitigation.  The talk never strayed toward competency.

In aggravation, the government argued, and the district court agreed, that Garza willfully perjured himself when he testified contrary to what he had told the arresting agents.  To justify its finding that Garza's statements were deliberate lies, the court, reading from its own trial notes, offered its impression that Garza was playing possum on the stand—pretending to be confused on direct only to become alert and engaged on cross. Both the judge and the prosecutor noted that Garza even anticipated one of the prosecutor's questions.  "I think Mr. Garza is malingering," the court said.

It then sentenced Garza to 240 months on the receipt or distribution charge and 120 months on the possession charge, both terms to run concurrently. Garza's contribution to the hearing, his allocution, was this: "Just that I apologize, sir, for everything—I just want to get better. Sorry. I'm sorry."

## II

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III

A defendant that "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *See Drope v. Missouri*, 420 U.S. 162, 171–72 (1975). And "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* at 172 (citing *Pate v. Robinson*, 383 U.S. 375 (1966)). Sometimes "adequate" means that the district court must sua sponte consider a defendant's competency. The question is whether this is one of those times.

Garza says yes. He argues that the district court plainly erred by failing to sua sponte hold a competency hearing.[3]

---

[3] The failure to sua sponte hold a competency hearing will always be reviewed for plain error. *United States v. Dreyer*, 705 F.3d 951, 960 (9th Cir. 2013) ("This is because a defense counsel who is attuned to his client's mental condition and recognizes that the defendant's competency is in question would not leave it up to the district court to order a

Failing to sua sponte hold a competency hearing is plain error only if "the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence." *Dreyer*, 705 F.3d at 961 (internal citations and quotations omitted). To raise a genuine doubt, there must be "substantial evidence that, due to a mental disease or defect, the defendant is either unable to understand the nature and consequences of the proceedings against him *or* to assist properly in his defense." *Id*. (internal citations and quotations omitted) (emphasis in original). Relevant evidence falls into three broad categories: medical history, the defendant's behavior in and out of court, and defense counsel's statements about the defendant's competency. *See, e.g.*, *United States v. Marks*, 530 F.3d 799, 814 (9th Cir. 2008).

Our review is limited. We ask only whether substantial evidence exists such that a reasonable judge would harbor a genuine doubt.[4] *See United States v. Mitchell*, 502 F.3d 931, 986 (9th Cir. 2007). Whether the defendant is, in fact, competent is a separate inquiry outside our ambit.

---

competency hearing sua sponte, rather, he would move for such a hearing himself. If his motion was denied we would then evaluate the district court's denial of the motion rather than its failure to order a hearing sua sponte.").

[4] Even though this is a direct appeal, we look to our cases reviewing collateral challenges to the extent they also involve a "substantial evidence" inquiry. *See, e.g.*, *Deere v. Woodford*, 339 F.3d 1084, 1086 (9th Cir. 2003) (applying substantial evidence standard to pre-AEDPA habeas proceeding); *Davis v. Woodford*, 384 F.3d 628, 644–45 (9th Cir. 2000) (applying substantial evidence standard to post-AEDPA habeas proceedings).

**A**

The substantial evidence standard is "not easily applied." *Basset v. McCarthy*, 549 F.2d 616, 619 (9th Cir. 1977). "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts." *Drope*, 420 U.S. at 180. Accordingly, it is understandable that our case law lacks specific rules about when the standard is met.

Nonetheless, general guidelines have emerged. For example, an appellant who has absolutely no medical history evidence indicating incompetency will almost certainly fail to upset his conviction. *See, e.g.*, *Mendez-Sanchez*, 563 F.3d 935, 948 (9th Cir. 2009); *Marks*, 530 F.3d at 815. Of course, a case may arise where the other indicators of incompetence are so powerful that we are compelled to find plain error even absent medical history evidence. It just hasn't happened yet.

Often, even cases with detailed medical history evidence fail to convince us that a reasonable judge would have a genuine doubt. *Basset*, 549 F.2d at 617, provides an apt example. There, the defendant, who had been deemed schizophrenic since childhood, was declared "presently insane" by two government psychiatrists just prior to trial. *Id.* at 617–20. He was then committed for treatment, and later released after other government doctors certified his competency. Nonetheless, the defendant later misbehaved toward his counsel at trial. That misbehavior could have arisen from schizophrenia or simple frustration. We decided

the latter after noting that, prior to the crime, the defendant was a socially capable, average college student and that, in spite of the misbehavior, neither the court nor defense counsel raised the competency issue. *Id.*

*Darrow v. Gunn*, 594 F.2d 767 (9th Cir. 1979), is similar. There, two government psychiatrists deemed the defendant normal. *Id.* at 769–70. Another, hired by the defendant, labeled him a "paranoid schizophrenic living in a delusional world." *Id.* at 769. In spite of that finding, the defense psychiatrist claimed that the defendant was "aware of the nature of the charges against him and could cooperate and collaborate with the public defender's office." *Id.* We found no substantial evidence. *Id.* at 770–71.

*Basset* and *Darrow* are but two unextraordinary examples of the many cases where we have found that some medical evidence—even some medical evidence of an extraordinarily debilitating condition—does not rise to the level of substantial evidence. *See, e.g.*, *Davis*, 384 F.3d at 644; *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985); *Steinsvik v. Vinzant*, 640 F.2d 949, 954 (9th Cir. 1981); *Sailer v. Gunn*, 548 F.2d 271, 274 (9th Cir. 1977). The bar is plainly high.

## B

But some cases do get over it. And that leaves the question of how to distinguish between the cases with medical evidence that do and the cases with medical evidence that don't. There appear to be two key factors: strong evidence of a serious mental disease or defect, and a clear connection between that disease or defect and some failure by the defendant to understand the proceedings or assist in his own defense.

Turning to the first factor, the question is how strong have we required the evidence of a serious mental disease or defect to be. Historically, we have deemed it sufficient in either of two situations. First, where it is undisputed that the defendant has a serious mental disease or defect. *See Torres v. Prunty*, 223 F.3d 1103, 1109–10 (9th Cir. 2000); *Miles v. Stainer*, 108 F.3d 1109, 1112–13 (9th Cir. 1997); *Moore v. United States*, 464 F.2d 663, 665–67 (9th Cir. 1972). And second, where the existence of a mental disease or defect is disputed, but the defendant engages in bizarre or erratic behavior, especially in court. *See Maxwell v. Roe*, 606 F.3d 561, 574–76 (9th Cir. 2010); *McMurtrey v. Ryan*, 539 F.3d 1112, 1125–27 (9th Cir. 2008); *Chavez v. United States*, 656 F.2d 512, 519 (9th Cir. 1981); *Tillery v. Eyman*, 492 F.2d 1056, 1059 (9th Cir. 1974). But, where the defendant behaves and the medical experts battle over whether he is mentally disabled *at all*, we have not found substantial evidence. *See Amaya-Ruiz v. Stewart*, 121 F.3d 486, 492–93 (9th Cir. 1997); *de Kaplany v. Enomoto*, 540 F.2d 975, 983–85 (9th Cir. 1976) (en banc).

The second factor is a clear connection between the defendant's serious mental disease or defect—established via the first factor—and some failure by the defendant to understand the proceedings or assist in his own defense. Where the defendant's mental problem—even if severe—has no discernible impact on the proceedings, we have not found substantial evidence. *See Davis*, 384 F.3d at 645–46*; Boag*, 769 F.2d at 1343–44; *Steinsvik*, 640 F.2d at 952–54; *Bassett*, 549 F.2d at 620–21. Even a mentally deranged defendant is out of luck if there is no indication that he failed to understand or assist in his criminal proceedings. *See, e.g.*, *Steinsvik*, 640 F.2d at 951–54. And even if that same defendant did fail to understand or assist in his proceedings,

he would still be out of luck unless his mental impairment caused the failure.  *See, e.g.*, *Amaya-Ruiz*, 121 F.3d at 492–93.  We must see a connection.  A defendant who refuses to work with his lawyer out of spite alone is not incompetent even if that defendant has a serious mental disease or defect.  *See, e.g.*, *Davis*, 384 F.3d at 645–46.

Our cases finding substantial evidence have consistently turned on these two key factors.  Our most recent case and one of our oldest are prime examples.  In *Dreyer*, 705 F.3d at 958–59, all the medical experts diagnosed the defendant with frontotemporal dementia.  *Id.*  And because the dementia was the stated reason why the defendant chose not to allocute at sentencing, we found substantial evidence that a reasonable judge would harbor a genuine doubt about his competency.  *Id.*  Both factors were present.  There was no dispute that Dreyer suffered from a serious mental disease or defect and it was that disease or defect that prevented him from assisting in his defense by preventing him from allocuting.

Similarly, in *Rhay v. White*, 385 F.2d 883, 884 (9th Cir. 1967), it was undisputed that the defendant had a "history of chronic mental disturbances, paranoid traits, violent behavioral explosions and previous institutional diagnoses, from the time he was a boy to his commission at age 22 of the murders."  Equally clear was that his inability to control himself hindered his defense, as defense counsel had to ask for recesses throughout the trial to allow his client time to cool down because he was "very close to a psychotic break."  *Id.* at 885.

## C

By attempting this rough categorization we do not mean to imply more uniformity than exists or to create rules where only rough guidelines are appropriate. Substantial evidence is, inevitably, a case-by-case analysis. And we acknowledge the presence of outliers. *See, e.g.*, *Deere*, 339 F.3d at 1086–87 (finding substantial evidence based solely on disputed medical evidence without extreme behavior). This discussion of the substantial evidence standard is meant only to provide general guidelines. Guidelines we now apply to Albert Garza.

## IV

There is no substantial evidence such that a reasonable judge would harbor a genuine doubt about Garza's competency. Garza has medical history evidence but neither of the two key factors is present. Garza's medical history evidence is not strong—it is disputed whether he has a serious mental disease or defect at all, and his behavior, both in and out of court, was far from erratic. Nor is there a clear connection between any mental disease or defect and any failure on Garza's part to understand the proceedings or assist in his own defense. Thus, Garza's case falls among those with some medical history evidence that nonetheless fail to exhibit substantial evidence.

## A

Garza has shown neither of the two hallmarks that separate the cases with medical history evidence that reach substantial evidence from those that do not. First, Garza's medical history evidence isn't strong. Although dementia

certainly qualifies as a serious mental disease or defect, Middleton and Hope dispute whether Garza has it.[5] Because of the dispute, Garza needs strange behavior to satisfy the first factor. But he exhibited none. According to Hope, "Garza was housed in the general population . . . without incident. [And he] was generally able to adapt to the demands of incarceration." "There were no signs of odd or bizarre behavior" during his weeks in federal medical custody. The trial was no different. Garza sat through the trial and testified without incident, much less an incident like what we've required in the past. *See Maxwell*, 606 F.3d at 570–71 (suicide attempts); *Tillery*, 492 F.2d at 1057 (laughing at the jury, ripping off clothes, screaming).

Second, there is no clear connection between Garza's putative dementia and any negative impact on his ability to understand the proceedings or assist in his defense. To the contrary, we know Garza understood the nature of the proceedings because he described them, accurately and in his own words, to Hope. And Garza was, in fact, able to assist in his defense. He testified. He allocuted. And his counsel had no complaints. Garza's own testimony that he didn't know what was going on is simply not credible in light of his explanation to Hope and his sharp, if false and unsuccessful, testimony on cross-examination. There is no substantial evidence here.

---

[5] We think that no reasonable judge would doubt that Hope got the better of the debate. Middleton was tentative. He repeatedly noted that a review of Garza's medical records would have firmed-up his diagnosis, but he never reviewed those records. Hope did. She also conducted more tests and observed Garza for far longer than did Middleton.

This conclusion draws further support from two obvious places.   First, Garza's lawyer dropped the competency challenge after Garza was evaluated in federal medical custody.  That he chose to yield the issue, rather than seek a hearing, is telling.  *See Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991) ("[A] defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings.").  That he never raised the issue at trial, even after Garza's testimony on the subject, is even more so. Second, the district court was well aware of Garza's mental health issues.  He said so.  And he reviewed the two doctors' reports before the sentencing.  Yet, instead of holding a hearing, he found that Garza was malingering and that he committed willful perjury on the stand.  These findings, made by an experienced trial judge with a far better vantage point than ours, give us confidence in our conclusion.

## B

Garza makes another argument, attempting to reach plain error by statutory, as opposed to evidentiary, means.  He relies on the statutes providing for competency proceedings in federal court, including 18 U.S.C. § 4241(a), which obligates district courts to sua sponte hold competency hearings on reasonable cause:

> The court shall . . . order [a competency] hearing on its own motion, if there is ***reasonable cause*** to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the

> proceedings against him or to assist properly
> in his defense.

18 U.S.C. § 4241(a) (emphasis added). Subsection (b) provides that "prior to the date of the hearing, the court may order a psychiatric or psychological examination" and it refers to 18 U.S.C. § 4247(b), which allows the court to, "[f]or the purposes of an examination[,] . . . commit the person to be examined . . . to the custody of the Attorney General."

Relying on these statutes, Garza makes two arguments. The first runs like this: Garza was committed under §§ 4241 and 4247, so the district court must have had reasonable cause to believe he was incompetent. Since the district court had reasonable cause, Garza argues that we must find substantial evidence that a reasonable judge would harbor a genuine doubt. This logic ignores our obligation to review all the evidence before the district court, not just the evidence it had when it committed Garza. All the judge had at that time was Middleton's report and the parties' stipulation; Hope's contrary report and Garza's courtroom performance came much later. We have just explained why all the evidence, taken together, fails to establish plain error. It is simply irrelevant that some of the evidence would do the trick if evaluated in isolation.

The second argument appears to be that any defendant committed for examination under § 4247 is, by virtue of the committment, entitled to a competency hearing. This argument is not without textual support, as § 4241(b) does imply that the "examination" will be ordered "prior to the hearing." But the more specific language trumps the general, and that specific language requires a hearing on "reasonable

cause." It makes perfect sense that the examination ordered under § 4247 might, as it apparently did here, dispel reasonable cause.    A § 4247 examination does not automatically entitle a defendant to a hearing.

## V

There was no plain error here because no reasonable judge would harbor a genuine doubt about Garza's competency; no reasonable judge would harbor a genuine doubt about Garza's competency because there was not substantial evidence; there was not substantial evidence because Garza's medical history, his behavior in and out of trial, and his defense counsel's statements do not reveal a defendant incapable of either understanding the nature of the proceedings against him or assisting in his defense.

**AFFIRMED**.