FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> DAVID JOHN TELLES, JR., *Defendant-Appellant.* | Nos. 19-10218 <br> 19-10402 <br><br> D.C. No. <br> 4:16-cr-00424-JSW-1 <br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted June 14, 2021
San Francisco, California

Filed July 29, 2021
Amended November 16, 2021

Before: MARY M. SCHROEDER, MILAN D. SMITH,
JR., and LAWRENCE VANDYKE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Criminal Law

The panel (1) filed an Amended Opinion affirming John Telles, Jr.'s convictions and sentence for online enticement of a minor in violation of 18 U.S.C. § 2422(b), travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b), and engaging in illicit conduct in foreign places in violation of 18 U.S.C. § 2423(c); (2) denied a petition for panel rehearing; and (3) denied on behalf of the court a petition for rehearing en banc.

In the Amended Opinion, the panel held that the district court did not err in denying Telles's motions for a competency hearing. The panel observed that at no point in the proceedings was there substantial evidence of Telles's incompetence and that, instead, the evidence reveals a consistent pattern of intentionally disrupting the proceedings and feigning incompetence to avoid trial and later, sentencing.

The panel held that the district court acted within its discretion when it excluded based on Fed. R. Crim. P. 12.2(d) a defense psychiatrist's expert testimony relating to a mental condition bearing on guilt, where Telles, who did not cooperate with the government's expert, failed to submit to the government's expert's examination, as required under Fed. R. Crim. P. 12.2(d)(1)(B).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that under either de novo or abuse of discretion review, the district court correctly denied Telles's *Faretta* request to represent himself on the ground that it was made for the purpose of delay.

The panel held that the district court did not abuse its discretion in admitting a forensic-psychologist's testimony on typical behaviors of sex offenders of child victims. Telles argued that admission of the testimony violated Fed. R. Evid. 702 and 403 and due process because the testimony concerned behaviors associated with sex offenders and their "groomed" victims that "are not scientifically probative of the statutory elements and issue the jury was tasked to resolve." The panel wrote that this argument is foreclosed by *United States v. Halamek*, 5 F.4th 1081 (9th Cir. 2021).

The panel held that the district court did not err by applying U.S.S.G. § 4B1.5(b)(1), which requires that the defendant engaged in a "pattern of activity" involving prohibited sexual conduct. The panel wrote that Telles provided no authority to support the argument that his abuse of the victim—he sexually abused her the first night he arrived in the United Kingdom and the second night of his trip—constitutes a single occasion of abuse.

## COUNSEL

Elizabeth Garfinkle (argued), Oakland, California, for Defendant-Appellant.

Anne Chantaline Hsieh (argued) and Vanessa Baehr-Jones, Assistant United States Attorneys; Merry Jean Chan, Chief, Appellate Section; David L. Anderson, United States

Attorney; United States Attorney's Office, Oakland, California; for Plaintiff-Appellee.

## ORDER

The Opinion filed July 29, 2021 (Dkt. 79), and reported at 6 F.4th 1086, is amended by the Amended Opinion filed in its place concurrently with this order.

With these amendments, the panel unanimously voted to deny the petition for panel rehearing. Judge M. Smith and Judge VanDyke voted to deny the petition for rehearing en banc, and Judge Schroeder so recommended. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote. Fed. R. App. P. 35. The petitions for rehearing and rehearing en banc are **DENIED**. No future petitions for rehearing or rehearing en banc will be entertained.

## OPINION

M. SMITH, Circuit Judge:

David John Telles, Jr. appeals from his convictions following a jury trial for one count each of online enticement of a minor in violation of 18 U.S.C § 2422(b), travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b), and engaging in illicit conduct in foreign places in violation of 18 U.S.C. § 2423(c). Telles asserts that the district court violated his constitutional rights by denying him a competency hearing, excluding his psychiatric expert, denying his motion to represent himself, proceeding with trial in absentia, and conducting

fundamentally unfair proceedings. Telles also challenges the district court's inclusion of the government's psychologist's expert testimony and the application of the "repeat and dangerous sex offender against minors" sentencing enhancement to his sentence.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.

Telles met T.B., a fourteen-year-old British girl, in May 2014 through an online gaming site, Clash of Clans. In their first interaction, T.B. informed Telles of her age. Telles initially used an alias and presented himself as fourteen years old, but ultimately disclosed his true age, which was thirty-eight.

Over the next two months, Telles and T.B. chatted on Clash of Clans and over Kik, a messaging application. Their conversations eventually became romantic and sexual in nature, with Telles profusely complimenting T.B. and calling her his girlfriend. During this time, T.B. shared horrifying, made-up stories of family members' deaths, abuse by fictional foster family members, a fall requiring hospitalization, and an assault resulting in surgery. Telles responded with concern, assistance, and romantic and sexual interest.

Telles escalated the conversations by expressing his intent to visit T.B. in England and marry her. Telles bought a ring, applied for and obtained an expedited passport, and informed his teenaged children about "everything," "[m]arriage[,] new mom." Telles told T.B., that one of his

children "ke[pt] asking [T.B.'s] age," and Telles suggested that they had to say T.B. was older, "[l]ike 18[,] maybe 17." Telles then purchased round-trip tickets for a two-day trip to England, saved a photo of T.B.'s passport to his phone, and shared his travel plans with T.B.

Telles arrived in London in June 2014. T.B. sent him a map to help him find her. Telles suggested that she pack her passport, birth certificate, money, and medicine, clear her phone, and leave her parents a note. Once Telles arrived, T.B. sneaked out of her house, and they drove to a nearby hotel. In the hotel room, Telles sexually assaulted T.B. "Midway through" the assault, Telles "pulled out a ring and got down on a one knee and proposed to [T.B.]" Telles and T.B. spent the next day driving, purportedly looking for a lawyer to help them marry in Scotland. The following night, Telles took T.B. to a second hotel. Telles again sexually assaulted T.B.

They woke up the next morning to T.B.'s father calling Telles's phone. Telles discouraged T.B. from speaking with her father or the police, advising T.B. that she "shouldn't tell anyone what happened because he'll get in trouble." Telles tried to coax T.B. into cooperating with him by telling her that, due to a medical condition, he would die if he went to jail, which would effectively make her a murderer. Telles also convinced T.B. that in their initial conversations, she had lied about her age, causing her to blame herself for his crimes. T.B.'s father ultimately found her and Telles at a nearby pub. Soon after T.B.'s father arrived, the police arrived and arrested Telles.

**B.**

In October 2016, a grand jury returned an indictment against Telles, charging him with (1) online enticement of a

minor in violation of 18 U.S.C § 2422(b) (count 1); (2) travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) (count 2); and (3) engaging in illicit conduct in foreign places in violation of 18 U.S.C. § 2423(c).

Once charged, Telles had difficult relationships with his appointed counsel. His first federal public defender successfully moved to withdraw as counsel nearly a year after the indictment was filed, citing "[a] serious breakdown in communication and trust" in his relationship with Telles. Telles's second appointed counsel also expressed an inability to work with him, and in February 2018, Telles successfully moved to replace him. The district court then appointed Michael Stepanian to represent Telles.

In April 2018, after twelve exclusions of time to allow for effective preparation of Telles's various counsel, the district court set a trial date for October 15, 2018. A few months later, however, in June 2018, government counsel and defense counsel received a message from one of Telles's family members indicating that Telles was "considering firing" Stepanian. The district court scheduled a hearing to discuss the issue, during which Telles moved to have additional co-counsel appointed, or alternatively, to replace Stepanian. The district court denied the motion, finding that Telles's request was "done for the purpose of delay."

Approximately three months later—six weeks before trial—Stepanian notified the district court that he intended to move to withdraw as counsel. At a subsequent status conference in September 2018, Telles moved to represent himself, and Stepanian formally moved to withdraw. Telles claimed that he had "made it clear to the lawyers for several months" that he wished to discharge Stepanian. Stepanian also acknowledged that their relationship had deteriorated, rendering it "virtually impossible for [Stepanian] to prepare

an adequate defense for [Telles]." Stepanian also raised concerns about Telles's competency to stand trial, explaining to the district court that they had a psychiatrist appointed to examine Telles and that doctor's preliminary diagnosis was that Telles was autistic. Telles's autism, Stepanian argued, "superimposed itself on [their] relationship," which led Stepanian to "feel that [he could not] get proper assistance from [Telles] in his own defense." After conducting a colloquy on Telles's self-representation, the district court ordered an expedited briefing schedule on that issue and whether the trial should be postponed.

A few days later, Stepanian formally moved for a competency hearing. In his brief, Stepanian explained that the aforementioned psychiatrist, Dr. Denise Kellaher, met with Telles on two separate occasions and believed that "Telles clearly suffers from a severe case of Autism Spectrum Disorder (ASD) such that he lacks the capacity to consult counsel and assist in preparing his defense." Stepanian then renewed his motion, attaching Dr. Kellaher's abbreviated report and his own declaration. Dr. Kellaher's report concluded that "Telles has high functioning [ASD] and an unspecified learning disorder. Both of these developmental conditions contribute to his present inability to understand information related to court, to appraise risks and benefits when making decisions, and to collaborate reasonably with his attorneys for the benefit of his defense." Applying the Autism Diagnostic Observation Scale (ADOS-2), Dr. Kellaher found Telles scored 18, 11 points above the threshold for a clinical diagnosis of ASD. Dr. Kellaher opined that "[a]t this severity level, individuals with ASD are inflexible, have trouble coping with change, and may find their restricted or repetitive behaviors interfere with functioning."

Telles refuted Stepanian and Dr. Kellaher's claims that he was not competent to stand trial. The district court asked Telles whether he had the capacity to understand the charges against him, and Telles responded, "I know it full well." The district court then asked, "And would you tell me what you base that on?" To which Telles answered, "The charge carries ten years to life for the first one, and maximum of 30 for the second and a maximum of 30 for the third." Telles also claimed that his capacity to communicate with his attorney was "perfectly fine." From his perspective, his "irreconcilable differences" with Stepanian were "separate" from his competency to stand trial.

The district court denied all three motions—Stepanian's motion to withdraw as counsel, Telles's motion to represent himself, and the motion for a competency hearing—in one order. As to the competency hearing, the district court concluded that "the available evidence show[ed] overwhelmingly that Mr. Telles ha[d] actively participated in his defense, assisted his counsel, and [was] capable of continuing to do so." The district court further noted that Telles understood the criminal proceedings against him, citing Telles's calls to his family from jail where he "made explicit representations indicating he was reviewing and drafting documents and engaged in plea negotiations" and "instructed his family to communicate to the government and to his own attorneys on his behalf." Finally, the district court relied on Telles's own claims of competence.

In denying Stepanian's motion to withdraw, the district court concluded that Stepanian failed to show good cause. The district court held that appointing new counsel would not resolve anything because "Telles's difficulties with his attorneys [were] not specific to [his] relationship with

Mr. Stepanian or Ms. Naegele," they were "entirely [ ] of his own making."

Lastly, the district court denied Telles's request to represent himself, finding that it "was made for the purpose of delay." The district court cited Telles's indication that "if allowed to proceed *pro se*, his first action would be to file a motion to delay the trial," and Telles's "serial requests for new counsel," which "have already caused significant delays." The district court also found that that any further delay of trial would prejudice the government given that it "had already made extensive arrangements to procure more than a dozen international witnesses," including T.B. In addition, the district court relied on Telles's concession that "he would not be able to effectively represent himself" because of his autism and learning disabilities.

Several weeks after Telles moved to represent himself but before the district court ruled on the motion, Telles (through counsel) had filed a notice of intent to introduce expert evidence relating to a mental condition bearing on guilt under Federal Rule of Criminal Procedure 12.2(b). Telles attached Dr. Kellaher's preliminary report to the notice. Upon the government's request, the district court ordered that the government be permitted to conduct its own exam of Telles, pursuant to Rule 12.2(c)(1)(B).

The government's expert, Dr. Daniel Martell, a forensic neuropsychologist, attempted to conduct an evaluation of Telles's mental condition over approximately seven hours. Telles, however, refused to answer many of Dr. Martell's questions and made little effort in performing Dr. Martell's tests, leading Dr. Martell to conclude that Telles was obstructionist and malingering. Because of Telles's behavior, the district court granted the government's motion to order Dr. Kellaher to videotape all future interviews with

Telles and give those recordings to the government within 48 hours. But after this order was entered, Telles had no further meetings with Dr. Kellaher.

Upon the government's motion, the district court excluded Dr. Kellaher's testimony at trial, relying on three grounds. First, the court held that Telles's behavior during Dr. Martell's evaluation violated the court's previous warning that Telles "risked forfeiting the opportunity to present his own expert or to present a mental disease or defect if he did not cooperate with the government's expert." Second, the district court held that Dr. Kellaher's testimony fell short of both prongs of the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), test, pursuant to Federal Rule of Evidence 702, because her report "was chock-full of conclusory, broad statements, with little scientific or factual support for her conclusions or her methodology." Finally, the district court held that Dr. Kellaher's report improperly "focused on whether Mr. Telles had the appropriate mens rea at the time of the alleged offense," testimony that Federal Rule of Evidence 704(b) prohibits. The court did not, however, prevent Telles from presenting a mental disease or defect defense.

Stepanian renewed his competency hearing request for a second time on October 12, 2018, after the jury had been empaneled and before the court had ruled on the government's motion to exclude Dr. Kellaher's testimony. Telles was found unresponsive in his holding cell and remained hospitalized in a catatonic state for five days. Trial proceedings halted as the district court heard evidence to determine the cause of Telles's comatose state. Dr. Sharon Chan, an internal medicine doctor treating Telles, diagnosed

Telles with either malingering or conversion disorder.[1] Dr. Matthew Arnold, a neurologist, examined Telles and concluded that the "more likely" diagnosis was malingering, not conversion. Lastly, Dr. Matthew Hirschtritt, an adult psychiatrist doing a residency in forensic psychiatry, testified that based on his review of Telles's medical records and Dr. Martell's report, it was his opinion "that there [was] a strong discrepancy between the symptoms that Mr. Telles [had been] exhibiting . . . and any known medical neurologic or psychiatric condition." Accordingly, Dr. Hirschtritt concluded that it was "more likely than not" that Telles was malingering.

The district court denied the renewed motion for a competency hearing, finding that the government clearly established that Telles was malingering. Next, because Telles "consciously and deliberately voluntarily absented himself" from trial, pursuant to Federal Rule of Criminal Procedure 43, the court granted the government's motion to proceed with trial. To remedy Telles's absence, the district court ordered that the trial proceedings be streamed live through an audio feed into Telles' hospital room and that the trial be video recorded. By the second day of witness testimony, Telles had come out of his comatose state and returned to the courtroom.

On the third day, after T.B. had finished testifying and was leaving the courtroom, Telles stood up, took off his jacket, fell backward to the floor, and was removed, non-responsive, on a gurney. The next day, Telles was found

---

[1] Dr. Chan explained that "malingering is when you intentionally consciously either feign or cause a symptom for the purpose of some sort of personal gain as opposed to conversion disorder when you have a symptom develop as a result of a subconscious response to stress."

unresponsive in his cell and was again absent from the proceedings. Stepanian renewed his competency motion for a third time and requested that trial be delayed to accommodate audio-streaming to the jail to which Telles was being transferred. The district court denied both requests.

Telles returned to the courtroom the following day. However, when counsel attempted to discuss whether Telles would testify, Telles appeared not to "understand the proceedings against him [or] . . . what is happening" and not to recognize the names of parties in courtroom. Stepanian then renewed his motion for a competency hearing for a fourth time, emphasizing that Telles hit his head upon his last fall. The district court denied the motion, admonished Telles of his right to testify or not to testify and noted on record that Telles was "playacting and looking at his papers and continuing with this charade that he has attempted to put on this court."

Telles did not testify, and the trial proceeded without any further issue. The jury returned guilty verdicts on all counts. Problems again arose before and during sentencing.

While preparing for sentencing, Stepanian renewed his motion for a competency hearing for a fifth time and moved to withdraw as counsel. He noted that Telles refused to meet with him or the probation officer. The district court again denied both motions.

Stepanian renewed his motion for a competency hearing for the sixth and final time in his response to the government's sentencing memorandum. Stepanian attached a retained-psychologist's report which concluded that Telles was psychologically disturbed and suffered from obsessive and self-destructive behaviors. At the sentencing hearing,

the district court again denied the motion, concluding that "none of th[e] new information raises a genuine doubt as to Mr. Telles's competence." Telles then, speaking in the third person, proclaimed in a long, rambling speech, "I have tried to remove or understand this, but it is important to Mr. Telles that he is a coffee bean. He will only say that the one who matters understands it."

The district court ultimately sentenced Telles to 302 months in custody and 15 years of supervised release. Over Telles's objections, the district court applied the obstruction of justice enhancement under U.S.S.G. § 3C1.1, and the enhancement for repeat and dangerous sex offender under U.S.S.G. § 4B1.5(b)(1). Telles timely appealed.

## ANALYSIS

### A.

We first consider whether the district court erred in denying Telles's repeated motions for a competency hearing. We conclude that it did not.

Pursuant to 18 U.S.C. § 4241, a district court must grant a defendant's motion to hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *See also Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). On appeal, "we review the record 'to see if the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence.'" *United States v. Brugnara*, 856 F.3d 1198, 1214 (9th Cir. 2017) (quoting *United States*

*v. Dreyer*, 705 F.3d 951, 960 (9th Cir. 2013)). And "we are mindful that in general, the district court is in the best position to evaluate claims of physical and mental illness impacting the defendant at trial." *United States v. Turner*, 897 F.3d 1084, 1105 (9th Cir. 2018).

A genuine doubt about the defendant's competence exists if there is substantial evidence of incompetence. *United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014). This "standard is 'not easily applied,'" *id.* (quoting *Bassett v. McCarthy*, 549 F.2d 616, 619 (9th Cir. 1977)), but our previous case law has set "[t]he bar [ ] plainly high." *Id.* at 1135. "Relevant evidence falls into three broad categories: medical history, the defendant's behavior in and out of court, and defense counsel's statements about the defendant's competency." *Id.* at 1134 (citing *United States v. Marks*, 530 F.3d 799, 814 (9th Cir. 2008)).

Telles contends that substantial evidence of his incompetency existed before trial, during trial, and at sentencing. Telles relies on Dr. Kellaher's report, Stepanian's declarations, his bouts of catatonia, and his behavior during trial and at sentencing. In opposition, the government argues that Telles demonstrated active participation in his defense throughout his proceedings, and that his bizarre and disruptive conduct was more litigation strategy than evidence of incompetence. We agree with the government: "[A] reasonable judge, faced with this record, would not have found it necessary to doubt [Telles's] competency." *Brugnara*, 856 F.3d at 1215–16.

Telles's understanding of the proceedings against him and his assistance in his defense were evident in his recorded calls from jail and his conversations in court before trial. The district court found that "Telles made explicit representations [to his family] indicating he was reviewing

and drafting documents and engaging in plea negotiations, among other things." He insisted on correcting factual discrepancies in the record and "advocated, apparently vociferously, for trial strategies and arguments," often depending on his own intensive legal research. "Telles also discussed using mental health as part of his litigation strategy." Moreover, in his pretrial colloquies with the district court, Telles "indicated an awareness of the nuances of privilege, prejudice, and jeopardy." And when asked, Telles "time and time again insisted that he [was] competent." He told the court that he understood the charges against him and the sentences each one carries. These were not the conversations of an incompetent defendant, but of one deeply involved in his defense and knowledgeable of the nature of the proceedings against him, applicable case law, and his constitutional rights. *See Brugnara*, 856 F.3d at 1215–16 (relying on a telephone call from jail to the defendant's family to demonstrate a lack of substantial evidence of incompetence).

Dr. Kellaher's report does nothing to change our minds. Although we do not doubt her diagnosis of ASD was correct, we do doubt—and more importantly, the record fails to demonstrate—that Telles's autism "impact[ed] [ ] his ability to understand the proceedings or assist in his defense." *Garza*, 751 F.3d at 1137. Our circuit's precedent is clear: "[S]trong evidence of a serious mental disease or defect" is not enough to raise a genuine doubt as to a defendant's competency. *Id.* at 1135. There must also be "a clear connection between that disease or defect and some failure by the defendant to understand the proceedings or assist in his own defense." *Id.* "Even a mentally deranged defendant is out of luck if there is no indication that he failed to understand or assist in his criminal proceedings." *Id.* at 1136 (citing *Steinsvik v. Vinzant*, 640 F.2d 949, 951–54 (9th Cir.

1981)). And conclusory allegations like Dr. Kellaher's are plainly not enough to establish a connection between Telles's autism and his competence to stand trial.[2]

Telles's behavior during trial bolsters our conclusion. Telles's two episodes of catatonia were not accompanied by any measurable medical problem. His vital signs always remained normal, and he recovered and returned to the courtroom after the district court concluded that his absences were voluntary. In addition, two experts concluded that Telles's first catatonic state was more likely malingering than conversion disorder, and the third concluded that it was either malingering or conversion disorder. Telles's behavior, therefore, resembles "nothing more than a deliberate attempt to circumvent the court's rules." 856 F.3d at 1216. Such behavior does nothing to demonstrate Telles's inability to understand the proceedings or assist in his defense. *See id.* at 1215–16; *see also Garza*, 751 F.3d

---

[2] For similar reasons, Stepanian's declarations concerning Telles's alleged incompetence are not enough to get his case over the high bar of substantial evidence. *See Garza*, 751 F.3d at 1135. Although a defense counsel's representations are a "unquestionably a factor which should be considered," *Drope v. Missouri*, 420 U.S. 162, 177 n.13 (1975), "[a] defendant who refuses to work with his lawyer out of spite alone is not incompetent even if that defendant has a serious mental disease or defect." *Garza*, 751 F.3d at 1136. Telles's difficulties with his attorneys appear to stem from his spite, not his ASD.

at 1136.  It "makes him a nuisance, not incompetent."[3, 4]
*Brugnara*, 856 F.3d at 1216.

We therefore affirm the district court's denials of
Telles's motions for a competency hearing.  At no point in
the proceedings was there substantial evidence of Telles's
incompetence.  Instead, the evidence reveals a consistent
pattern of intentionally disrupting the proceedings and
feigning incompetence to avoid trial and later, sentencing.

## B.

Telles next challenges the district court's exclusion of
Dr. Kellaher's expert testimony.  The district court provided
three bases for its decision: Federal Rules of Evidence 702
and 704 and Federal Rule of Criminal Procedure 12.2(d).
We review the district court's decision for abuse of
discretion.  *United States v. Cohen*, 510 F.3d 1114, 1123 (9th
Cir. 2007) (quoting *United States v. Finley*, 301 F.3d 1000,

---

[3] The strongest evidence of Telles's potential incompetence was his
bizarre allocution at sentencing.  However, we cannot view this evidence
"in isolation," *Chavez v. United States*, 656 F.2d 512, 517 (9th Cir.
1981); it must be considered against the background of Telles's
malingering during and before trial.  And although we recognize that "a
trial court must always be alert to circumstances suggesting a change that
would render the accused unable to meet the standards of competence,"
*Drope*, 420 U.S. at 181, there was no accompanying medical evidence at
sentencing to a raise a genuine doubt as to Telles's incompetence, *see*
*Garza*, 751 F.3d at 1134–53.

[4] Given that we affirm the district court's finding that Telles's
absence from trial was a result of his malingering, we also affirm the
court's conclusion that Telles's absence was voluntary.  We therefore
reject Telles's argument that the district court abused its discretion in
proceeding with trial *in absentia*.  Telles waived his right to be present
by feigning catatonia.  *See Brewer v. Raines*, 670 F.2d 117, 119 (9th Cir.
1982).

1007 (9th Cir. 2002)). And we give "the district court wide latitude in admitting or excluding psychiatrist evidence." *United States v. Byers*, 730 F.2d 568, 571 (9th Cir. 1984). Because we agree that Telles failed to comply with the requirements of Rule 12.2(d), we decline to review the district court's alternative holdings.

Pursuant to Federal Rule of Criminal Procedure 12.2(d)(1)(B), the district court "may exclude any expert evidence from the defendant on the defendant's mental disease, mental defect, or any other mental condition . . . if the defendant fails to . . . submit to an examination when ordered under Rule 12.2(c)." The question before us is whether Telles sufficiently "submit[ted]" to the government's expert's examination, and we conclude that he did not.

The district court "warned Mr. Telles that he risked forfeiting the opportunity to present his own expert or to present a mental disease or defect defense if he did not cooperate with the government's expert." Yet Telles proceeded to do exactly that. Telles "moved slowly, procrastinated, and seemed unwilling to answer basic biographical questions." The government's expert, Dr. Martell, administered three malingering tests. All of them showed that Telles was malingering. Because of Telles's recalcitrance, Dr. Martell concluded that "Telles thwarted [his] ability to accomplish [a forensic examination to evaluate his capacity to form the specific intent required] by refusing to discuss [the] case, malingering during the clinical examination, and working so slowly that no psychodiagnostics testing could be completed." This left the government unable to rebut Dr. Kellaher's conclusions with its own expert's diagnosis.

Accordingly, we conclude that the district court acted within its discretion by excluding Dr. Kellaher's testimony. Holding otherwise would unfairly prejudice the government and incentivize future defendants to adopt malingering as a defense strategy. Because we conclude that the district court did not err, we need not consider whether any error was harmless.

## C.

Telles's third argument on appeal is that the district court erred in denying his motion to represent himself. We disagree.

The Sixth Amendment "guarantees the . . . right to proceed without counsel at trial." *United States v. Farias*, 618 F.3d 1049, 1051 (9th Cir. 2010) (citing *Faretta v. California*, 422 U.S. 806, 814–15 (1975)). "[T]o invoke the right to self-representation," a defendant "must make a timely 'unequivocal, voluntary [and] intelligent' request." *Id.* (footnote omitted) (quoting *United States Maness*, 566 F.3d 894, 896 (9th Cir. 2009) (per curiam)). The district court must then "hold a hearing—commonly known as a *Faretta* hearing—to determine whether the defendant is knowingly and intelligently forgoing his right to appointed counsel." *Id.* at 1051–52. A defendant's "motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be tactic to secure delay." *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir. 1982).

"We review the district court's factual findings for clear error, but we have not yet clarified whether denial of a *Faretta* request is reviewed de novo or for abuse of discretion." *United States v. Kaczynski*, 239 F.3d 1108, 1116 (9th Cir. 2001). Because we agree with the district court's conclusion that Telles exercised his right to represent

himself "as a tactic to delay trial proceedings," Telles's claim fails under either standard of review. *Id.*

Where the defendant's "pre-trial conduct ha[s] already caused substantial delay, a showing that his motion [to represent himself] included a request for a continuance would be strong evidence of a purpose to delay." *Fritz*, 682 F.2d at 784. The record reflects both here. Telles substantially delayed trial by consistently requesting to substitute his counsel and refusing to work with appointed counsel, and Telles's request to represent himself was accompanied by a request for a continuance. We need no further proof that Telles's *Farreta* request was made for the purpose of the delay. The district court, therefore, correctly denied his motion and proceeded with trial.

## D.

Telles challenges the district court's denial of his motion to exclude forensic-psychologist Dr. Darrel Turner's testimony on typical behaviors of sex offenders of child victims. Telles argues that admission of the testimony violated Federal Rules of Evidence 702 and 403 and due process because the testimony concerned behaviors associated with sex offenders and their "groomed" victims that "are not scientifically probative of the statutory elements and issue the jury was tasked to resolve."

Our recent decision in *United States v. Halamek*, 5 F.4th 1081, 1088 (9th Cir. 2021), forecloses Telles's argument. There, we affirmed the district court's inclusion of expert testimony on grooming, concluding that such evidence was probative because it "'illuminate[d] how seemingly innocent conduct . . . could be part of a seduction technique." *Halamek*, 5 F.4th at 1088 (quoting *United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999)). The same reasoning

applies here: Dr. Turner's "testimony explained for the jury that [Telles's] behavior with [T.B.]" could be "innocent [ ] behavior," or it "could actually have been part of his plan to engage in illicit sexual activity with her." *Id.* The admission of the testimony, therefore, did not violate Rule 702. Nor did the admission of Dr. Turner's testimony violate Rule 403 or Telles's right to due process of law. Dr. Turner did not testify as to Telles or T.B. specifically—he "merely gave a straightforward account of relevant background information based on [his] own knowledge and experience." *United States v. Johnson*, 860 F.3d 1133, 1141 (8th Cir. 2017). The district did not abuse its discretion in admitting this testimony.

**E.**

Finally, Telles challenges the district court's application of U.S.S.G. § 4B1.5(b)(1) to his sentence, arguing that his "behavior with T.B. was not a pattern of repeated criminal behavior." We review the district court's interpretation of the sentencing guidelines de novo, *United States v. Riley*, 335 F.3d 919, 925 (9th Cir. 2003), and we affirm.

Section 4B1.5(b)'s sentencing enhancement applies when "the defendant's instant offense of conviction is a covered sex crime, neither [the career offender enhancement], nor [§ 4B1.5(a)] applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct." A pattern is established if the defendant commits the prohibited conduct "on at least two separate occasions." U.S.S.G. § 4B1.5, Cmt. 4(B)(i). Although we have not yet set forth a definition of "separate occasions," the record here clearly reflects that Telles sexually abused T.B. on two separate occasions—the first night he arrived in the United Kingdom and the second night of his trip. Telles provides no authority to support the argument that his abuse of T.B.

constitutes a single occasion of abuse.  The district court's application of the sentencing enhancement, therefore, was not error.

## CONCLUSION

Telles alleges several errors rendered his trial unfair, yet the record makes clear that any error was "largely of his own making." *Brugnara*, 856 F.3d at 1216.  Thus, in spite of his disruptive behavior, Telles received a fair trial, and we affirm his conviction on all grounds.

**AFFIRMED**.