**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30240 |
| Plaintiff-Appellee, | D.C. Nos.<br>3:18-cr-00035-SLG-1<br>3:18-cr-00035-SLG |
| v. | |
| LOUIS HOLGER EKLUND, AKA Louis Holger, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted December 8, 2023
Seattle, Washington

Before: McKEOWN, N.R. SMITH, and SANCHEZ, Circuit Judges.

Defendant-Appellant Louis Holger Eklund ("Holger") appeals his jury

conviction and sentence for two counts of cyberstalking in violation of 18 U.S.C.

§§ 2261A(2)(B) and 2261(b)(5), (b)(6). We have jurisdiction under 28 U.S.C.

§ 1291. We affirm his convictions but remand for modification of two of the

special conditions of supervised release and the no-contact order.

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

After indictment and upon the Government's motion, the district court in April 2018 ordered Holger to undergo a psychological examination to determine his competency to stand trial and represent himself. Holger was diagnosed with "delusional disorder, grandiose and persecutory types with bizarre content." Following a competency hearing, the district court found Holger to be incompetent to stand trial and ordered his detention at a mental facility, where forensic psychologist Dr. Lea Ann Preston Baecht noted Holger's delusional ideation regarding the trafficking of children by government officials. Dr. Baecht opined that Holger needed anti-psychotic medication to be restored to competency, which he refused. The Government filed a motion to involuntarily administer medication pursuant to *Sell v. United States*, 539 U.S. 166 (2003).

Holger opposed the Government's motion and sought a second competency hearing. In November 2019, the district court granted Holger's request for a renewed competency evaluation on the basis that seventeen months had passed since the first incompetency finding and Holger's courtroom behavior seemed "generally appropriate." At the second competency hearing on January 31, 2020, forensic psychologist Dr. Kristy Becker testified that Holger was competent to stand trial and represent himself, although she qualified her opinion as "tenuous." Dr. Becker opined that Holger had a clear understanding of the legal proceedings and there was "no doubt" as to Holger's "adequate intellectual ability." The

2

question of competency turned on whether Holger "can separate this delusional thought process enough from the legal proceedings to be fit and competent to proceed." Dr. Becker recommended that trial commence promptly due to "the transient nature of [Holger's] mental state." All parties and the court agreed that Holger was "tenuous[ly]" competent to stand trial. The court then conducted a *Faretta* inquiry and found Holger competent to represent himself. *See Faretta v. California*, 422 U.S. 806, 835 (1975). Trial was initially scheduled for March 31, 2020 but was delayed by thirteen months due to the COVID-19 pandemic.

In the intervening period, the district court had an opportunity to discern any change in Holger's mental status when he virtually or telephonically attended status conferences on November 20, 2020, December 15, 2020, January 29, 2021, and March 12, 2021. On April 7, 2021, the district court held an in-person pretrial conference to address Holger's multiple mailings to the court, including statements that he felt coerced to represent himself because his attorneys were not willing to defend his constitutional rights. The court held a final pretrial conference on April 14 and conducted another *Faretta* inquiry. Holger reassured the court under oath that he was not being coerced. The court again found that Holger had knowingly and intelligently waived his right to counsel. Following a six-day jury trial in April 2021, Holger was found guilty on both counts of cyberstalking.

## DISCUSSION

1.      We review for plain error the court's alleged failure to hold a competency hearing *sua sponte*. *United States v. Turner*, 897 F.3d 1084, 1107 (9th Cir. 2018). Plain error is found if "the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence." *United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014) (citation omitted). "To raise a genuine doubt, there must be 'substantial evidence that, due to a mental disease or defect, the defendant is either unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Id.* (citation and emphasis omitted). As we observed in *Garza*, "[w]here the defendant's mental problem—even if severe—has no discernible impact on the proceedings, we have not found substantial evidence." *Id.* at 1136.

The fifteen-month period between the second competency hearing in January 2020 and the final pretrial hearing in April 2021 raises questions about Holger's competency to stand trial, particularly in light of Dr. Becker's "tenuous" competency finding, her recommendation that he be tried promptly, and Holger's multiple filings with the court attempting to air his conspiracy theories. The district court, however, had multiple opportunities to observe Holger's behavior in the months leading up to the April 2021 *Faretta* hearing, as Holger attended

4

pretrial conferences in November and December 2020 and in January and March 2021.

Substantial evidence supports the district court's finding that Holger was able "to understand the nature and consequences of the proceedings against him" and "assist properly in his defense" at trial. *See* 18 U.S.C. § 4241(a). Holger capably represented himself at trial and demonstrated "the mental acuity to see, hear and digest the evidence" in order to mount a meaningful defense. *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001). He "gave [an] opening statement[], testified, examined and cross-examined witnesses, challenged jury instructions, and delivered [a] closing argument[] of significant length." *United States v. Johnson*, 610 F.3d 1138, 1146 (9th Cir. 2010). On this record, we cannot conclude that the district court plainly erred by failing *sua sponte* to hold another competency hearing.

2. The district court did not clearly err in permitting Holger to waive his right to counsel. The court followed extensive safeguards in its *Faretta* colloquies to ensure that Holger's waiver was unequivocal, and it appointed standby counsel to assist him at trial. Holger "demonstrated adequate rational ability to consider potential legal options at trial, . . . and expressed a thorough understanding of the specifics of his charges." *United States v. Audette*, 923 F.3d 1227, 1237 (9th Cir. 2019) (internal quotation marks and citation omitted). That his unorthodox

5

defense strategy was unsuccessful does not place him in the "narrow class of defendants" unable to waive their right to counsel due to severe mental illness. *Id.* (citing *Indiana v. Edwards*, 554 U.S. 164, 178 (2008)).

3.     Holger argues that the district court's voir dire procedure impaired his ability to effectively exercise his peremptory challenges. "The district court's selection of procedures for the exercise of peremptory challenges is reviewed for an abuse of discretion." *United States v. Warren*, 25 F.3d 890, 894 (9th Cir. 1994). The court conducted voir dire in batches of 15 jurors and gave Holger 11 peremptory challenges, one more than required under Rule 24(b). Fed. R. Crim. P. 24(b)(2). While the record suggests that Holger may not have fully understood the court's voir dire process, he has not shown how any error prejudiced his right to an impartial jury. *See United States v. Mendoza*, 157 F.3d 730, 734 (9th Cir. 1998).

4.     Holger asserts multiple unpreserved trial errors based on witness testimony that portrayed him as a "menacing" and uncaring parent. We review evidentiary issues "not raised or objected to below [only] to prevent a manifest injustice." *United States v. Archdale*, 229 F.3d 861, 865 (9th Cir. 2000) (citation omitted). The testimony challenged on appeal was not unduly prejudicial because it concerned either Holger's alleged conduct or his intent—the main factors at issue in the Government's cyberstalking charges. *See* 18 U.S.C. § 2261A(2). Given the strength of the Government's case against him, the cumulative effect of

any errors is unlikely to have altered the outcome of his trial.

5.      Holger contends that the district court failed to pronounce his conditions of supervised release at his sentencing hearing, violating his constitutional right to be present at sentencing.  "The court's oral incorporation by reference of conditions set forth in the presentence report at the sentencing hearing . . . generally meet[s]" the requirement to pronounce special conditions at sentencing.  *United States v. Montoya*, 82 F.4th 640, 652 (9th Cir. 2023) (en banc).  The district court orally referenced special conditions that the presentence report and a proposed no-contact order had recommended, directed Holger to the pertinent documents, and gave him a "meaningful opportunity to challenge those conditions by being informed of the proposed conditions in advance and being given 'an opportunity to review them with counsel.'"  *Id.* (citation and brackets omitted).  The district court satisfied its sentencing pronouncement obligations.

6.      Holger contends that the district court improperly delegated authority over his punishment by giving the probation officer discretion to determine what kind of mental-health and substance-abuse treatment programs comprise the special conditions of his supervised release.  *See United States v. Nishida*, 53 F.4th 1144, 1150 (9th Cir. 2022).  In *Nishida*, we held that a district court's broadly worded special conditions impermissibly delegated the "nature and extent" of the defendant's punishment to a nonjudicial officer by allowing a probation officer to

7

decide the "location, modality, . . . and intensity" of treatment. *Id.* at 1155 (citations omitted).

Similar to the conditions in *Nishida*, special condition 1 requires Holger to participate in "any" recommended substance-abuse treatment "at the direction of the probation officer." Likewise, special condition 3 mandates Holger's participation in "any" recommended mental-health treatment "[a]t the direction of the probation officer." The unqualified language of these conditions bestows too much discretion on the probation officer. *Nishida*, 53 F.4th at 1152; *see also United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009). We vacate special conditions 1 and 3 and remand so that the district court can "clarify the scope of authority delegated to the probation officer." *Nishida*, 53 F.4th at 1155.

7. Finally, Holger argues that the no-contact order exceeds the court's statutory authority under 18 U.S.C. § 1514(b). Section 1514(d) defines "harassment" to be "a serious act or course of conduct directed at a *specific person* that (i) causes substantial emotional distress *in such person*; and (ii) serves no legitimate purpose." 18 U.S.C. § 1514(d)(1)(B) (emphases added). In turn, a "specific person" under the statute includes a "victim or witness . . . and . . . an *immediate family member* of such a victim or witness." *Id.* § 1514(d)(1)(G) (emphasis added). While § 1514(b) prohibits the "harassment" of a victim, witness, or his or her immediate family member, the court's no-contact order

8

prohibits communication with the victims, witnesses, or "a person whom Mr. Holger knows to be a spouse, child, parent, sibling, or *co-worker*" of a victim or witness. The current order exceeds the scope of statutorily protected parties by barring all forms of contact with co-workers of the victims and witnesses.[1] We remand for the district court to modify the no-contact order to prohibit contact with a co-worker of a victim or witness when such contact is made for purposes of harassment, as defined under 18 U.S.C. § 1514(d)(1)(B), of an identified victim or witness.

Convictions **AFFIRMED.** Special conditions 1 and 3 of supervised release and no-contact order **VACATED** in part and **REMANDED** for resentencing.

---

[1] Because we remand on statutory grounds, we have no occasion to reach Holger's First Amendment challenge. *See, e.g.*, *Rescue Army v. Mun. Ct. of City of Los Angeles*, 331 U.S. 549, 568–70 (1947) (summarizing constitutional avoidance doctrine).